**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ralph FREEDSON, Defendant-Appellant.**

No. 78–2145

United States Court of Appeals,
Ninth Circuit.

April 12, 1979.

John C. Emerson, Sp. Atty., San Francisco, Cal., for defendant-appellant.

Richard L. Rosenfield, Flax & Rosenfield, Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING and MERRILL, Circuit Judges, and BURNS *, District Judge.

PER CURIAM.

Appellant was convicted of conspiring with an unindicted coconspirator, Jackson, to submit false statements and documents to the Internal Revenue Service as part of a "money-laundering" scheme in violation of 18 U.S.C. § 1001 and 18 U.S.C. § 371. According to the government's evidence, Jackson launched the scheme by suggesting to a prison acquaintance that appellant, Jackson's former tax attorney, could "launder" the profits of crime. Jackson arranged a meeting between Jackson's prison acquaintance (now an FBI informer), FBI agents posing as organized crime figures, and appellant. Appellant described a scheme in which he and Jackson would receive the tainted money, commingle it with trust accounts appellant claimed to manage, invest the commingled funds in commodities transactions, and return half the illegal monies to the agents' nominees through sham salaries and commissions which would appear to come from legitimate trading in commodities. Negotiations among appellant, Jackson, and the agents continued over the next five months, and culminated in a meeting in San Francisco at which the agents handed appellant a suitcase containing one million dollars in funds to be "laundered." After appellant had accepted the money, the agents announced their true identity.

Appellant's principal defense was that he had no intention to carry out the scheme but intended to expose it to IRS and collect an informer's reward.

■ Appellant argues that the evidence was insufficient to sustain the verdict because the scheme was so ludicrous and transparently impractical that a reasonable jury would necessarily entertain doubt as to his intent in dealing with the agents. We have examined the record and conclude there was more than adequate evidence from which the jury could conclude beyond a reasonable doubt that appellant meant to implement the "laundering" scheme as best he could.

■ Appellant complains because the trial court refused to give the standard entrapment instruction. There was no evidence that appellant's participation in the conspiracy was induced by government agents. Jackson, not anyone associated with the government, involved appellant in the scheme. Jackson might have claimed entrapment; appellant could not. *United States v. Jenkins,* 470 F.2d 1061, 1063 (9th Cir. 1972). There was no basis in the evidence for appellant's suggestion that Jackson was an "unwitting agent" of the FBI who "ensnared" appellant to participate in the scheme. The evidence clearly estab-

---

* Honorable James M. Burns, District Judge, United States District Court for the District of Oregon, sitting by designation.

lished that Jackson acted as a principal lawbreaker, and not as an agent of law enforcement, in inducing appellant to conspire.

At oral argument, appellant advanced the additional theory that the jury could have believed appellant intended initially to turn his coconspirators in to the authorities and succumbed to the criminal intent to carry out the conspiracy only after being prodded by the agents and tempted by a half share in the proffered million dollars. There was no evidence before the jury to support this theory. Neither appellant nor any other witness intimated that appellant's mental state changed as the conspiracy unfolded; to the contrary, appellant consistently maintained he did not intend at any time to consummate the conspiracy, while the government as consistently contended appellant planned to go through with the scheme from the start.

The trial court correctly determined that no genuine entrapment issue was presented for jury resolution. *See United States v. Glaeser,* 550 F.2d 483, 487 (9th Cir. 1977).

The jury returned a verdict on the third day of deliberations. The judge who took the verdict ordered a poll. The fourth juror polled responded, weeping, "I voted yes [i. e., guilty] to man but no to God" and that she "wish[ed] to say not guilty." The judge halted the poll and, after a careful charge, sent the jury back for further deliberations.

Appellant contends that "returning the jury for further deliberation was inherently coercive." The trial court acted within the bounds of its discretion in directing further deliberations rather than discharging the jury. Fed.R.Crim.P. 31(d). The judge could well have concluded that further deliberation might clarify the undecided juror's state of mind and produce either a clear verdict or clear disagreement.

After an additional hour of deliberation, the jury returned a second guilty verdict. The trial judge agreed to and did poll each juror separately in chambers, but declined appellant's request to ask in addition "whether there was, in fact, any undue influence" exerted on the weeping juror.

The requested inquiry into the jury's internal deliberations would have been improper. Fed.R.Evid. 606(b). To the extent *Cook v. United States,* 379 F.2d 966 (5th Cir. 1967), survives adoption of Rule 606(b), it is not to the contrary. Unlike the ambiguous verdict in *Cook,* the final verdict here was not indefinite or qualified on its face; each juror, including the previously undecided juror, told the judge in the privacy of chambers that he agreed with the guilty vote.

Affirmed.