**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ernest NELSON, Defendant-Appellant.**

**No. 78–2361.**

United States Court of Appeals,
Fifth Circuit.

July 30, 1979.

Steven E. Kreisberg, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Linda Collins Hertz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before AINSWORTH and VANCE, Circuit Judges, and BOOTLE, District Judge.*

AINSWORTH, Circuit Judge:

Appellant Ernest Nelson and two others were charged in a three-count indictment with conspiracy to distribute cocaine and heroin in violation of 21 U.S.C. § 846, and with possession with intent to distribute cocaine and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.[1] Codefendant Gene Nelson Goodman (appellant's son) entered guilty pleas during trial to all three counts. Codefendant Hampy Mae Coachman (Goodman's sister) was acquitted on all three counts. Appellant Nelson was acquitted on the conspiracy count, but the jury was unable to reach a verdict on the two substantive counts, as to which the court declared a mistrial.

Appellant Nelson filed a motion to dismiss the remaining two substantive counts of the indictment charging possession with intent to distribute cocaine and distribution of cocaine in violation of 21 U.S.C.

---

\* District Judge of the Middle District of Georgia, sitting by designation.

1. 21 U.S.C. § 846 provides:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 841(a)(1) provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance

. . . . .

18 U.S.C. § 2(a) provides:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

§ 841(a)(1) and 18 U.S.C. § 2. The Government opposed the motion indicating that it would retry defendant Nelson as an aider and abettor on the substantive counts. The matter was referred to a United States magistrate whose order denying appellant's motion was subsequently reviewed and affirmed by the district court.

On appeal, Nelson contends that collateral estoppel bars conviction in a new trial on the substantive counts of the indictment because facts essential to conviction were determined favorably to him by the jury in its verdict of acquittal on the conspiracy count. He also contends that the trial judge abused his discretion in declaring a mistrial over his objection and that retrial on the substantive counts would violate the double jeopardy clause of the fifth amendment. We reject those contentions and affirm the district court's denial of Nelson's motion to dismiss the remaining substantive counts of the indictment.

*Collateral Estoppel*

■ As a matter of law, aiding and abetting the commission of a crime and conspiracy to commit that crime are separate and distinct offenses. The latter requires proof of an agreement to commit an offense; the former does not. Thus, as a general rule, the double jeopardy clause does not prevent prosecution for both conspiracy and aiding and abetting. *Pereira v. United States,* 347 U.S. 1, 11–12, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954); *Nye & Nissen v. United States,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949); *United States v. Cowart,* 5 Cir., 1979, 595 F.2d 1023. The collateral estoppel doctrine, however, precludes the Government from relitigating issues determined favorably to a defendant in a prior judgment. *Sealfon v. United States,* 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948). In the criminal context, the doctrine has roots in the double jeopardy clause's policy against exposing a defendant to repeated risks of conviction for the same conduct. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In sum, therefore, the double jeopardy clause does not preclude prosecution for aiding and abetting a substantive offense subsequent to an acquittal on a charge of conspiracy to commit that offense. In any subsequent prosecution, however, the collateral estoppel doctrine precludes relitigation of issues determined favorably to the defendant in the judgment of acquittal on the conspiracy charge.

In this case, the appellant, Nelson, contends that the jury's verdict of acquittal on the conspiracy count embodies a determination favorable to him of facts essential to conviction on the substantive counts as an aider and abettor. Therefore, he argues, because the doctrine of collateral estoppel prohibits relitigation of those facts, the substantive counts should be dismissed. We disagree.

■ As the jury was clearly instructed by the trial court, in order to convict Nelson on the conspiracy count, the Government needed to prove *an agreement* to distribute narcotics in which Nelson knowingly participated. To convict him in a second trial on the substantive counts as an aider and abettor, however, the Government need not prove an agreement. "Aiding, abetting, and counseling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal when he consciously shares in a criminal act, regardless of the existence of a conspiracy." *Pereira v. United States,* 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954). Therefore, because the acquittal on the conspiracy count may have been premised on the Government's failure to prove the requisite element of agreement, we cannot hold that the verdict determined facts favorably to appellant which are essential to conviction on the substantive counts, which would require no proof of an agreement. Thus, we cannot hold at this stage, without knowing what evidence the Government will rely upon in a second trial, that the doctrine of collateral estoppel inevitably bars Nelson's conviction on retrial. We note, however, that in a second trial the doctrine of collateral estoppel will prohibit the Government

from using evidence which, if believed, would necessarily indicate participation in the conspiracy which the Government failed to prove in the first trial.[2]

### Double Jeopardy

Nelson's second contention is that the trial court abused its discretion in declaring a mistrial when the jury failed to reach a verdict on the two substantive counts. As a result, he contends, retrial of those counts is barred by the double jeopardy clause of the Constitution, which limits the trial court's discretion to declare a mistrial in order to protect the defendant's "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). *See also United States v. Jorn*, 400 U.S. 470, 479–486, 91 S.Ct. 547, 554–558, 27 L.Ed.2d 543 (1971). "[I]n the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *Id.* at 486, 91 S.Ct. at 558.

■■■ According to Justice Story's classic formulation, the trial judge's authority to declare a mistrial is limited to those situations where "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Perez*, 9 Wheat. 579, 6 L.Ed. 165 (1824). *See also Arizona v. Washington*, 434 U.S. 497, 504, 98 S.Ct. 824, 830 (1978); *United States v. Jorn*, 400 U.S. 470, 480–81, 91 S.Ct. 547, 555 (1971). The inability of a jury to reach a verdict has been "long considered the classic basis for a proper mistrial." *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 832 (1978). "[W]ithout exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Id.* at 509, 98 S.Ct. at 832. Moreover, the determination by a trial judge that a jury is genuinely deadlocked, and hence that there is a "manifest necessity" for declaration of a mistrial, is to be accorded great deference on review.

If retrial of the defendant were barred whenever an appellate court views the "necessity" for a mistrial differently than the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments. The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court. *Id.* In this case, we cannot conclude that the trial court abused its broad discretion in concluding that the jury was genuinely deadlocked and that a "manifest necessity" for declaration of a mistrial therefore existed.

The jury commenced deliberation at 11:35 a. m. Almost six hours later, at 5:15 p. m., the court was informed that the jury had reached a verdict regarding the codefendant, Coachman, but could not agree regarding the appellant, Nelson. With consent of counsel for both defendants, the court called in the jury and instructed it as follows:

> If you are unable to reach a verdict on any defendant or on any count of the indictment, then simply notify me that you are unable to reach a verdict on that count or that defendant. . . .

> If you think by talking further that you can reach a verdict, well, then, fine, you should do that, because, of course, it is desirable to reach a verdict one way or the other. But there is no time limit or pressure or requirement that you stay longer or not. It is entirely up to you.
> . . . .

> If there is part of it that you cannot agree upon, well, then, that's—I almost

---

**2.** *See United States v. Mespoulede*, 2 Cir., 1979, 597 F.2d 329; *United States v. Kramer*, 2 Cir., 1961, 289 F.2d 909; *Yawn v. United States*, 5 Cir., 1957, 244 F.2d 235.

said that's fine, because I think anything the jury do is all right, but I hesitate to say, "It's fine," but, of course, it's whatever you decide. . . .

And, again, if you want to deliberate another half an hour, or all night, that's entirely up to you, too, no pressure on you, or if you want to come back and talk in the morning, you can do that. Anything you want to do is the way it can be worked out.

Trial Transcript at 215–218. After being so instructed, the jury deliberated further. At 5:40 p. m., it returned the verdict of not guilty as to codefendant Coachman on all three counts and, as to appellant Nelson, not guilty on the conspiracy count. It indicated, however, that it could not reach a verdict as to Nelson on the two substantive counts. In response to the request by Nelson's counsel that the jury be given more time to deliberate and that it be given an *Allen* charge, *see Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), the court inquired of the jury foreman and of the jury itself whether further deliberation might produce agreement. Upon a negative response, the court declared a mistrial.[3] The court did not abuse its discretion in doing so. The conclusion that the jury was genuinely deadlocked was, in the circumstances, fairly and reasonably reached.

Appellant's reliance in arguing to the contrary on *United States v. Gordy*, 5 Cir., 1976, 526 F.2d 631, is misplaced. In that case, the foreman reported to the trial court only that the jury was hung. The trial court did not inquire whether there was any possibility that agreement might at some point be reached, and neither the foreman nor the jury in its entirety expressed any view in that regard. 526 F.2d at 633–34. By contrast, in this case the court pointedly inquired whether a possibility of agreement existed and declared a mistrial only when both the foreman and the jury in its entirety responded negatively. Furthermore, in *Gordy* the declaration of a mistrial appeared to result as much from the desire of the judge to clear a crowded docket and catch an airplane as from a conclusion that the jury was genuinely deadlocked. As the Supreme Court explained, with reference to *Gordy*, "if the trial judge acts for reasons completely unrelated to the trial problem which purports to be the basis for the mistrial ruling, close appellate scrutiny is appropriate. *Cf. United States v. Gordy*, 526 F.2d 631 (CA 5 1976)." *Arizona v. Washington*, 434 U.S. 497, 510, 98 S.Ct. 824, 832–33 n. 28 (1978). In this case, the record contains no hint that the declaration of a mistrial was motivated by anything other than a determination that the jury was genuinely deadlocked. Hence, this reviewing court must accord great deference to that conclusion and, in the circumstances of this case, must reject appellant's contention that it constituted an abuse of discretion.

The district court's denial of appellant's motion to dismiss the remaining substantive counts of the indictment is therefore affirmed.

AFFIRMED.

---

**3.** The dialogue with the jury was as follows:

THE COURT: Ladies and gentlemen, counsel have asked me to ask you whether or not you think that there is any possibility that you could reach a unanimous verdict on the other two counts of the case against Mr. Nelson if you discussed the matter further, perhaps tomorrow morning or tonight or whatever you wish to do.

Mr. Miller [the foreman], your note would indicate that you probably feel that—or you feel that there is not much need to do that, but do you think you could reach a verdict if you had more discussion about the matter?

JUROR No. 5 (Mr. Miller): Based on the fact that we have been in there for the time that we have in the discussions that took place based on the evidence that we had, I do not believe, in my opinion, that further discussions would generate a decision other than the one that has been made.

THE COURT: All right. Do all of you think that Mr. Miller has fairly stated the matter and that there would be no real need to consider the matter further?

[All jurors respond in the affirmative.]

Transcript at 220–221.