UNITED STATES of America

v.

**Paul HILL.**

**Crim. No. 79–161.**

United States District Court,
E.D. Pennsylvania.

Oct. 1, 1982.

Howard Klein, John Rosenberg, Asst. U.S. Attys., Philadelphia, Pa., for plaintiff.

Hardy Williams, Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

Paul Hill was convicted for a second time of five counts of distributing heroin. His post-trial motions contend the second trial was barred by collateral estoppel and double jeopardy, and that there was error in pre-trial and trial rulings. For the reasons which follow, his motions must be denied.

Because the facts have been discussed in my prior opinion, 481 F.Supp. 558 (E.D.Pa. 1979), *reversed and remanded,* 655 F.2d 512 (3d Cir.1981),[1] I will only mention them briefly. Hill was employed as a clothing salesman for Krass Bros. in Philadelphia. On March 9, 1979, Hill was approached by Ian Daniels, a government informant, who inquired about purchasing heroin. Thereafter, on March 13, 1979, Hill gave Daniels a small sample of heroin. Daniels gave the sample to his superiors at the Drug Enforcement Administration (DEA) who, after chemical analysis, determined Hill had access to high quality heroin. Because heroin of such quality usually comes from someone close to the source of importation, the DEA, through Daniels and other government agents, arranged purchases of heroin from Hill and Leonard Newton on March 14, 29, April 23, June 12, and June 18, 1979. Hill and Newton were arrested during the June 18, 1979, sale.[2]

Hill was indicted on six counts of distributing heroin and aiding and abetting in

---

1. A version of the facts appears in the opinion of the Court of Appeals.

2. Leonard Newton entered a plea of guilty.

violation of Title 21, United States Code, section 841(a)(1), and Title 18, United States Code, section 2(a), and one count of conspiracy to distribute heroin.[3] Rather than deny the acts which constituted the offense, Hill claimed he was entrapped by government agents. In September, 1979, a jury found Hill not guilty of conspiracy (Count 1) and one distribution count relating to March 13, 1979, (Count 2), and guilty on the remaining five counts (Counts 3–7). Ruling that I had "misapprehended" the nature of an offer of proof and "applied too restrictive a view to such offered testimony," the Court of Appeals reversed and remanded the case for a new trial. *United States v. Hill,* 655 F.2d 512, 514 (3d Cir. 1981).

Shortly after the mandate from the Court of Appeals was filed on October 6, 1981, the Government expressed its intention to retry Hill on the five distribution counts. On February 1, 1982, literally on the eve of the second trial, Hill filed a motion to dismiss based on the doctrine of collateral estoppel as it applies to criminal cases, and double jeopardy. I denied that motion as frivolous. After an eight day trial, Hill was found guilty on all counts.

Hill first asserts I erred in ruling against his collateral estoppel contentions. His basic argument as to collateral estoppel was advanced in three ways:

First, Hill moved to dismiss the indictment maintaining that the jury's verdict of not guilty on the conspiracy count constituted a finding that he had been entrapped and remained entrapped during the time span of the alleged conspiracy which encompassed each of the distribution counts. Because of his contention that the issue of his criminal intent during the conspiracy was found in his favor at the first trial, Hill argued the second trial forced him to relitigate that issue.[4] Additionally, and as part of his motion to dismiss, Hill maintained that the not guilty verdict as to the conspiracy would require preclusion at trial of all evidence that tended to prove the conspiracy regardless of whether it tended to prove the five distributions, because of necessity, he had defended against that evidence successfully at the first trial.

Second, Hill made basically the same argument in objecting to the introduction of evidence at trial, contending that any evidence which would tend to show the existence of matters referred to in the conspiracy count could not be offered because of the not guilty verdict at the first trial. Preclusion of such evidence would have effectively barred reprosecution on all five distribution counts and would have led to a directed verdict for Hill at the second trial.

█ Third, Hill asserted that any evidence which would show there had been a conspiracy or that would show there had been a distribution on March 13, 1979, could not be received because all facts pertaining to those charges were resolved in his favor at the first trial, he was not being tried on those matters, and therefore evidence concerning them was irrelevant.[5]

---

**3.** 21 U.S.C. § 841(a)(1) provides:
(a) Except as authorized by this subchapter it shall be unlawful for any person knowingly or intentionally—
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....
18 U.S.C. § 2(a) provides:
Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

**4.** This may be another version of Hill's "once entrapped always entrapped theory," i.e., entrapment on one date as a matter of law precludes conviction as to all subsequent dates.

**5.** The jury at Hill's second trial was not informed there had been an earlier trial, a charge of conspiracy, or a charge of unlawful distribution as to March 13. Hill objected to my refusal to allow the jury to hear evidence regarding his acquittal on two counts in the first trial without being informed of the conviction on five counts. This objection is meritless. Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Hill's having been found not guilty did not have any tendency to make the determination of any fact of consequence more or less probable. Therefore, it

■ I denied his motion to dismiss and overruled his objections to the evidence, but did rule that any evidence which pertained solely to the conspiracy or solely to the distribution on March 13 could not be received.[6] There was no error in these rulings.

■ Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation ..." *United States v. Keller,* 624 F.2d 1154, 1157 (3d Cir.1980), quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). In *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court "found a constitutional basis for the collateral estoppel doctrine in the Fifth Amendment guarantee against double jeopardy." [7] *United States v. Keller, supra,* "[A]s applied in criminal cases [collateral estoppel] has been used to bar not only reprosecution, ... but also evidence of crimes of which the defendant had been

---

was irrelevant and inadmissible. Fed.R.Evid. 402 (1981).

6. Just prior to the jury being sworn, Hill moved that I recuse myself because I had read the pre-sentence report in conjunction with sentencing after the first trial and therefore, a possibility of prejudice existed. N.T. 1–10. Noting that Hill's motion came at the eleventh hour, I posited the motion was brought for delay, and that Hill had not stated how I was prejudiced against him. N.T. 1–11. Accordingly, I refused the motion. As grounds for his post-trial motions, Hill contends my refusal to disqualify myself was error.

In *Gregg v. United States,* 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969), the petitioner sought reversal of his conviction because the trial judge allegedly read the pre-sentence report prior to the jury returning a verdict in violation of Fed.R.Crim.P. 32. Although refusing to reverse petitioner's conviction, the Court, citing Rule 32, noted that the trial judge should not read the pre-sentence report prior to the time a guilty verdict is returned or a plea of guilty entered due to the possibility of prejudice. *Gregg* has been interpreted by some courts to require reassignment of a case over which a judge presided which has been reversed and remanded for a new trial. See *United States v. Montecalvo,* 533 F.2d 1110 (9th Cir.1976); *United States v. Park,* 521 F.2d 1381 (9th Cir.1975). But see *United States v. Arnett,* 628 F.2d 1162 (9th Cir.1980); *United States v. Lyon,* 588 F.2d 581 (8th Cir.1978); *United States v. Robin,* 553 F.2d 8 (2d Cir. 1977); *United States v. Bourque,* 541 F.2d 290 (1st Cir.1976); *United States v. Hernandez-Vela,* 533 F.2d 211 (5th Cir.1976); *O'Shea v. United States,* 491 F.2d 774 (1st Cir.1974); *United States v. Small,* 472 F.2d 818 (3d Cir. 1972); *United States v. Ferretti,* 508 F.Supp. 913 (E.D.Pa.1981). Other courts, such as the Seventh Circuit, Eastern District of New York, and District of Connecticut, provide for the same result by local rule. The Third Circuit, however, has refused to adopt a per se rule of disqualification, and instead balances the possibility of prejudice with administrative conve-nience and expediency. *United States v. Small, supra; United States v. Ferretti, supra.*

Here, Hill tried to enunciate his allegations of prejudice without success. Hill alleged I was prejudiced because I refused his motion to dismiss based on collateral estoppel and decided the motion was frivolous. N.T. 1–12 to 1–14. Finally, Hill admitted that he did not think I was prejudiced. N.T. 1–18. Therefore, I did not abuse my discretion in refusing Hill's motion for recusal.

7. The Third Circuit differentiates between constitutional and doctrinal collateral estoppel. *United States v. Keller, supra,* 624 F.2d at 1159; *United States v. Venable,* 585 F.2d 71 (3d Cir. 1978). See also *United States v. Simon,* 225 F.2d 260 (3d Cir.1955); *United States v. DeAngelo,* 138 F.2d 466 (3d Cir.1943).

In considering the effect of the constitutional doctrine of collateral estoppel as enunciated in *Ashe* on our earlier cases applying the collateral estoppel defense, we stated that *Ashe* would entirely bar a retrial, when collateral estoppel effect is given to facts established in favor of the defendant which are necessary to sustain a conviction in a second prosecution. Without the protection of the double jeopardy safeguard, the defendant would be vulnerable to multiple prosecutions by a strategic severance of related counts. We indicated, however, that collateral estoppel in the broad scope previously enunciated in the earlier decisions of *United States v. DeAngelo,* 138 F.2d 466 (3d Cir.1943), and *United States v. Simon,* 225 F.2d 260 (3d Cir.1955), continues to apply in appropriate cases. '[The *DeAngelo* and *Simon* cases] retain their vitality however, to the extent that they would allow the defense of collateral estoppel to be raised in a second proceeding as to facts previously established but not necessary to sustain the conviction sought at retrial.'

*United States v. Keller, supra,* quoting *United States v. Venable, supra,* 585 F.2d at 76–78. Both facets of the doctrine are implicated here.

acquitted in prior prosecutions." *United States v. Keller, supra,* 624 F.2d at 1157.

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.

*Ashe v. Swenson, supra,* 397 U.S. at 444, 90 S.Ct. at 1194, quoting *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180. Evidence introduced in the trial leading to acquittal can be reintroduced in a second trial provided the court finds the fact "which defendant sought to bar was not previously determined in defendant's favor by the acquittal verdict." *United States v. Keller, supra,* 624 F.2d at 1158–59 n. 4; see also *United States v. Venable, supra; United States v. Castro-Castro,* 464 F.2d 336 (9th Cir.1972), *cert. denied* 410 U.S. 916, 93 S.Ct. 971, 35 L.Ed.2d 278 (1973).

As I previously noted, Hill first moved to dismiss the indictment and when that motion was denied, moved to preclude the introduction of all evidence, advancing what was essentially the same collateral estoppel argument in support of both motions. In essence, he contended that the not guilty verdict on the conspiracy count proved he had been entrapped during the entire time period of the conspiracy which encompassed the distributions subject to retrial because each of them was alleged as an overt act in the conspiracy count. Thus, Hill argued, no evidence could be received as to his criminal intent on the five distribution counts for which he was being tried because all issues pertaining to the conspiracy had been resolved in his favor by the jury at his first trial. Of course, Hill made this argument despite the fact that that jury had also found him guilty as to these same five distribution counts.

In view of Hill's assertion that collateral estoppel precludes the introduction of evidence as to matters decided at the first trial, I must examine the "pleadings, evidence, charge, and other relevant matter" to determine exactly what was decided there. If a rational jury at the first trial could have grounded its verdict upon an issue other than the one that Hill sought to foreclose at his second trial, that issue should not have been foreclosed. *Ashe v. Swenson, supra.* It is apparent that an articulation of Hill's argument demonstrates its fallacy. Hill wanted me to foreclose all evidence at the second trial, not just evidence as to those issues decided in his favor. What was foreclosed by the jury's verdict on the conspiracy count and the March 13, 1979, distribution count was a retrial of the essential elements of each. But that is all. The same jury which said he was not guilty on those two counts said he was guilty on the other five. Although it is true that entrapment was the sole basis of Hill's defense at the first trial, the not guilty verdicts on counts I and II did not establish that he was entrapped and thus foreclose that issue from consideration at retrial. First, I charged as to the essential elements of conspiracy and distribution, telling the jury it had to be satisfied as to the proof of each element of each offense beyond a reasonable doubt if there was to be a conviction. Thus, the jury may simply have decided one or more elements of these two offenses had not been established. *See e.g. United States v. Venable, supra,* 585 F.2d at 78. Secondly, the jury may have simply reached a compromise to resolve conflicting viewpoints in the jury room. Thirdly, it is quite possible that the jury concluded it would be unfair to convict Hill of a serious crime in view of the fact that only a small amount of heroin was given to Daniels on March 13 and no money was exchanged. The fourth possibility is that the jury concluded Hill was entrapped on March 13 simply because Daniels was the first to bring up the subject of heroin. The point is that it is impossible to say the jury's verdicts established Hill must have been entrapped as to Counts I and II—

much less can they form the basis for an extension of those verdicts to the other five counts. Therefore, no issue-preclusion at the second trial would have been warranted.

Hill embroiders his collateral estoppel argument with a "once entrapped always entrapped" theory, that is, because the jury found him not guilty of distribution as to March 13, and because his only defense was entrapment, as a matter of law he could not be guilty of the subsequent distributions because the taint of the March 13 indictment carried over to them and meant he was entrapped on these subsequent incidents. No case was cited to support the theory nor did my research uncover any such ruling. Hill advances this argument in the face of the fact that in the first trial I specifically charged the jury that if it found entrapment as to one or more counts, it could consider whether that entrapment carried forward to subsequent dates. The guilty verdicts show the jury rejected Hill's "once entrapped, always entrapped" theory.

In *United States v. Nelson*, 599 F.2d 714 (5th Cir.1979), a trial for aiding and abetting, the Government was precluded from introducing evidence indicating defendant's participation in a conspiracy of which previously he was acquitted. Similarly, in *United States v. Keller, supra,* the Government was precluded from introducing evidence of subsequent crimes to prove prior predisposition to rebut defendant's anticipated entrapment defense where defendant had been acquitted of the subsequent crimes. In both cases, admission of such evidence was deemed to eviscerate the prior jury verdict and force re-litigation of issues determined favorable to the defendant. *Keller, supra,* 624 at 1159–60; *Nelson, supra,* 599 F.2d at 717. That is simply not the case here. In his first trial, Hill was found *guilty* of the five counts subject to retrial. Allowing evidence in support of these five counts on retrial did not eviscerate the prior jury verdicts as Hill contends. Accordingly, it was not error to allow evidence tending to prove them to be introduced in the second trial.[8] See *United States v. Keller, supra; United States v. Venable, supra; United States v. Castro-Castro, supra.*

Next, Hill argues that because he was acquitted of the March 13, 1979, distribution based on entrapment, the collateral estoppel doctrine prohibited the introduction of all evidence at the second trial of the events prior to March 14, 1979, the date of the first distribution count at issue. Because I have determined that it is mere speculation to conclude the acquittal was based on entrapment, Hill's position has no merit. The only thing as to which evidence was admitted at the second trial which might have been resolved in Hill's favor at the first trial was the fact that he handed heroin to Daniels on March 13—and at his first trial, Hill admitted he had done that. Even though the jury at the second trial did not have before it a count in the bill of indictment relating to March 13, Hill's actions and his delivery of heroin on that date were relevant to the five counts which were before the jury. Federal Rule of Evidence 404(b) permits evidence of other acts to show, *inter alia,* preparation, plan, and intent. The March 13, 1979, distribution tended to show Hill's preparation for the larger distribution of March 14, 1979, and for that matter, all subsequent larger distributions. It also tended to show a plan or scheme, that a person selling heroin in large quantities first offers a sample of his goods to a prospective purchaser. It was for these reasons that the March 13, 1979, distribution was admitted. If it was error to admit *the fact* of the March 13, 1979, distri-

---

8. In fact, to *preclude* such evidence would eviscerate the jury verdict of guilty.

My ruling also was supported by Rules 105, 401, and 402 of the Federal Rules of Evidence regarding limited admissibility of evidence. Rule 105 states in pertinent part:

When evidence which is admissible ... for one purpose but not admissible ... for an-

other purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Rule 401 defines relevant evidence and Rule 402 provides that with exceptions, relevant evidence is admissible.

bution, of which Hill was acquitted, it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 705 (1967). First, there was evidence, in the record, viewed in a light most favorable to the Government, to prove Hill's predisposition.[9] For example, Ian Daniels testified he witnessed Hill distribute cocaine on two prior occasions. N.T. 3–41 to 43; 4–35 to 39; 4–56 to 64. Additionally, Hill's use of drug culture terminology and the split responsibilities of Hill and Newton in selling the heroin (one handled only money and the other only heroin) tended to prove Hill's prior involvement in the distribution of heroin.[10] Second, to exclude the March 13, 1979, distribution and the events leading up to it, would have mislead the jury. The only evidence before the jury would have been admission of a casual acquaintance relationship between Hill and Daniels followed by the distribution of one ounce of heroin worth $6000. For these reasons, Hill's post-trial motions on the collateral estoppel grounds are meritless.

■ Hill also seeks judgment of acquittal or a new trial based on my refusal to allow inquiry into charges of misconduct against Agent Richard Fekete of DEA, who directed the Hill investigation. Evidently, Agent Fekete's conduct in an investigation unrelated to Hill was challenged, and intra-agency (DEA) and criminal charges were lodged against him. Although Agent Fek-

ete was cleared of all wrongdoing, Hill argued that the charges of misconduct were relevant to Fekete's credibility. Contrariwise, the Government argued the nature of the charges said nothing about Agent Fekete's character for truthfulness or untruthfulness, particularly because the charges had been dropped or the issue resolved in Fekete's favor. Thus, the evidence was irrelevant. Rather than rely on the Government's representations, I permitted Hill to cross examine Agent Fekete regarding the charges outside the presence of the jury.[11] N.T. 6–31 to 6–36. Agent Fekete testified he was charged with unprofessional conduct by the DEA in November, 1979. Regarding the same incident, he was criminally charged with disorderly person, trespass, and false imprisonment. Fekete further testified that he "was acquitted . . . [of the criminal charges] and . . . completely reinstated by the Merit System Protection Board and found to have been the subject of improper prosecution by the Drug Enforcement Administration." N.T. 6–33. Having determined the evidence was not probative of Agent Fekete's credibility, I excluded it. N.T. 6–37. My ruling was correct.

Federal Rule of Evidence 608(b) states in pertinent part:

(b) Specific instances of conduct. Specific instances of the conduct of a wit-

---

9. This finding coupled with my finding that it was not error to admit into evidence occurrences prior to March 13, 1979, rebuts Hill's argument that the government failed to prove predisposition.

10. Hill also argues that I erred in permitting the DEA agents to so testify because they were, in effect, testifying as experts. Rule 702 of the Federal Rules of Evidence states in pertinent part:

If . . . specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

First, DEA agents certainly possess specialized knowledge of the unique habits and language usage of drug dealers. In fact, I can think of no more qualified experts in drug counterculture than DEA agents. Second, the testimony of

the agents assisted the jury to understand the evidence *and* determine a fact in issue. A jury cannot be expected to know or understand the habits and language of people involved in illegal drugs. Without the testimony of the agents, the jury may not have known that Hills' conduct and word usage were relevant to his predisposition to sell heroin. Accordingly, Hill's argument is without merit.

Additionally, the record is replete with facts demonstrating Hills' willingness and voluntary participation in distributions of heroin. For example, Hill did not resist Daniels' first request for heroin. Rather, he responded quickly and affirmatively. Also, Hill repeatedly arranged and negotiated heroin sales.

11. The government filed a motion *in limine* asking that I prohibit Hill from inquiring into the charges against Fekete in the jury's presence.

ness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, . . .

The first step in a 608(b) analysis is whether the specific conduct is probative of the witness' character for truthfulness or untruthfulness. Next, the court must decide whether the probative value of the evidence is substantially outweighed by unfair prejudice. See Fed.R.Evid. 403 (1981). *United States v. Bocra,* 623 F.2d 281, 288 (3d Cir.), *cert. denied,* 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980); *United States v. Rios Ruiz,* 579 F.2d 670, 674 (1st Cir.1978). Because "rule 608(b) is intended to be restrictive . . . the inquiry on cross-examination should be limited to . . . specific modes of conduct which are generally agreed to indicate a lack of truthfulness." *United States v. Bocra, supra,* quoting 3 Weinstein's Evidence ¶ 608[05] at 608–28 (1979). Acts of assault, force, or intimidation do not directly indicate an impairment of a witness' character for veracity. 3 Weinstein's Evidence ¶ 608[05] at 608–33 (1979). See *Gordon v. United States,* 383 F.2d 936, 940 (D.C.Cir.), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968).

The charges against Agent Fekete were disorderly person, trespass, and false imprisonment. Simply stated, they are in no way probative of Agent Fekete's character for truthfulness or untruthfulness and therefore, do not fall within rule 608(b). Furthermore, because Fekete was acquitted, undoubtedly I would have found the probativeness of the evidence substantially outweighed by its prejudice to the Government.[12] Accordingly, Hill's motions on this ground are meritless.[13]

▮ As yet another ground for acquittal or a new trial, Hill claims I coerced the jury by directing them to deliberate further after one juror, while announcing her verdict,

---

**12.** At trial, I stated that Fekete's acquittal of the charges made them of even less probative value. N.T. 6–37.

**13.** Hill assigns error to several trial rulings. Each of Hills' allegations is without merit and will be discussed briefly. During the second day of trial Hill moved that I sequester all government witnesses. See Fed.R.Evid. 615 (1981). Because the government stated the case agent would be operating a tape recorder and helping with the evidence and prior transcripts, I excluded the case agent from my sequestration order. N.T. 2–34. My ruling did not constitute error. *United States v. Strauss,* 473 F.2d 1262, 1263 (3d Cir.1973). Hill also objected to the use of a tape recording of a conversation of his with Miles Edwards, Jr., of the Philadelphia Police Department on April 17, 1979. N.T. 3–12 to 3–16; 5–11 to 5–14. Because the government had not produced the recording during the first trial, Hill argued the recording could not be used now due to double jeopardy and collateral estoppel. He also alleged government misconduct in withholding the recording from him at the first trial. Neither argument has merit. First, the recording did not relate solely to the conspiracy charge or the March 13, 1979, distribution count of which Hill was acquitted at the first trial. Second, Hill could not point to any prejudice suffered by virtue of not knowing about the recording at the first trial. Finally, the government stated the recording was first discovered while preparing for the second trial, and immediately upon discovery, a transcript was made and that, along with the recording, was given to Hill five weeks prior to the second trial. Under the circumstances, the government's actions neither amounted to misconduct nor prejudiced Hill. As yet another assignment of error, Hill contends I restricted his cross-examination of the "background" of Ian Daniels, the government informant. I must refuse relief on this ground for the simple reason that I do not know the instance to which Hill alleges error. Daniels was cross-examined for a day and a half. During cross-examination, there were numerous instances where questions or lines of inquiry were not permitted. Part of Hill's burden here is to raise an argument to which the Government can respond and on which the court can rule. Hill obviously has failed in meeting his burden in this respect. Finally, Hill alleges error was committed because I allowed perjured testimony by government witnesses. This claim borders on the absurd. First, all government witnesses were subject to cross-examination. Any alleged perjurious statements could have been highlighted by Hill at that time. Second, all transcripts from the first trial were available for use in impeaching government witnesses.

stated Hill was not guilty on four of the five distribution counts. After a few minutes of further deliberation, the jury returned a verdict of guilty on all counts. Hill contends I should have allowed the deputy clerk to continue polling the jury, and then declared a mistrial. I disagree.

After approximately 2½ hours of deliberation, the jury notified the marshall it had reached a verdict. The foreman announced the jury's verdict as guilty on all counts. During the jury poll, however, Juror 4 stated Hill was not guilty on four of the five distribution counts. The colloquy with Juror 4 was as follows:

As to March the 14th, 1979, do you find the defendant guilty or not guilty?

JUROR JAMES: Guilty.

THE DEPUTY CLERK: As to March the 29th, 1979, do you find the defendant guilty or not guilty?

JUROR JAMES: Not guilty.

THE COURT: Did you say not guilty?

JUROR JAMES: Yes.

THE DEPUTY CLERK: As to April 23, 1979, do you find the defendant guilty or not guilty?

JUROR JAMES: Not guilty.

THE DEPUTY CLERK: As to June the 12th, 1979, do you find the defendant guilty or not guilty?

JUROR JAMES: Not guilty.

THE DEPUTY CLERK: As to June the 18th, 1979, do you find the defendant guilty or not guilty?

JUROR JAMES: Not guilty.

THE COURT: Miss James, what was your answer so far as March the 14th was concerned?

JUROR JAMES: I beg your pardon?

THE COURT: As to March 14th what was your answer?

JUROR JAMES: Not guilty.

THE COURT: Members of the jury, I'm going to ask that you resume your deliberations.

JUROR JAMES: Wait a minute. March 14th, the first one?

THE COURT: Yes.

JUROR JAMES: Guilty.

THE COURT: But did you say not guilty as to all the others?

(No response)

I'm going to ask you to resume your deliberations because it's apparent you don't have a unanimous verdict at this point, so I will ask you please retire and resume your deliberations.

N.T. 8–58 to 8–60.

Federal Rule of Criminal Procedure 31(d) states in pertinent part that "[i]f upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged." Fed. R.Crim.Pro. 31(d) (1981). Rule 31(d) gives the trial judge discretion to decide which of the two available courses to take. It is not inherently coercive to direct the jury to deliberate further. *United States v. Freedson,* 608 F.2d 739, 741 (9th Cir.1979).

Generally, in the cases upholding verdicts as not coerced, the trial courts have questioned the polled juror to resolve any questions and then returned the juries for further deliberations. In the cases finding verdicts to be coerced, the trial courts had demanded in court categorical responses from jurors who expressed reservations or recalcitrance when polled, instead of returning the juries for additional deliberations.

*Amos v. United States,* 496 F.2d 1269, 1272–73 n. 3 (8th Cir.), *cert. denied,* 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 140 (1974). Compare cases finding coercion, *United States v. Sexton,* 456 F.2d 961 (5th Cir.1972) and *United States v. McCoy,* 429 F.2d 739 (D.C. Cir.1970) with *United States v. Morris,* 612 F.2d 483 (10th Cir.1979); *United States v. Freedson, supra; United States v. Brooks,* 420 F.2d 1350 (D.C.Cir.1969); *Williams v. United States,* 419 F.2d 740 (D.C.Cir.1969); and *United States v. Lockhardt,* 366 F.Supp. 843 (E.D.Pa.1973), *aff'd mem.,* 495 F.2d 1369 (3d Cir.1974). It is evident from the colloquy here that Juror 4 was confused. Rather than demand Juror 4 clarify her answer, I merely asked her to repeat the verdict. No further charge was given and instead, I directed the jury to retire to deliberate further. Because there was no

coercive colloquy with Juror 4, no error was committed.[14]

CONCLUSION

For the above reasons, Hill's post-trial motions will be refused.

---

**14.** Hill claims I erred in instructing the jury as to entrapment and aiding and abetting. Both claims are groundless and will be discussed only briefly. As to aiding and abetting, Hill merely contends I "improperly instructed and misled the jury as to the law of aiding and abetting as it applies to this case." Supplemental Reasons for Motions of Acquittal of [sic] New Trial, Docket Entry 80. Because I instructed the jury using the language of the statute and gave three simple examples of how a crime can be committed, Hill's claim has no merit. N.T. 8–26 to 8–28; 8–50 to 8–51. See 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* §§ 12.01–12.03 (3d ed. 1977)

(Cum.Supp.1982). Hill also contends my entrapment charge did not make clear the time when his predisposition had to be proved in relation to his prior acquittal on entrapment. First, the charge was clear that the government was required to prove Hill's predisposition to distribute heroin beyond a reasonable doubt only if there was evidence of unlawful inducement. N.T. 8–31 to 8–37. Second, as I discussed earlier, it is pure speculation to state Hill was acquitted of conspiracy and on distribution count at the first trial based on entrapment. See pp. 8 to 11 *supra*. Therefore, Hill's assignment of error has no merit.