**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Roy RODRIGUEZ, Defendant-Appellant.**

**No. 71-2287.**

United States Court of Appeals, Ninth Circuit.

Jan. 3, 1972.

Wesley C. Blake, San Diego, Cal., for defendant-appellant.

Harry D. Steward, U. S. Atty., Stephen G. Nelson, Asst. U. S. Atty., and Acting Chief, Crim. Div., Catherine A. Chandler, Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before MERRILL, BROWNING and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Roy Rodriguez appeals from a jury verdict convicting him of importation and transportation of heroin in violation of 21 U.S.C. § 174 and of conspiracy to commit the substantive crimes. He received five years on each of the three counts, to run concurrently. We affirm.

On November 21, 1970, Rodriguez drove his automobile into the United States at the San Ysidro port of entry. He and his female companion, Miss James, were returning from a brief visit to Tijuana.

11. See, Flandermeyer v. Cooper (1912), 85 Ohio St. 327, 98 N.E. 102, 105–107; and Note, 36 A.L.R.3d 928–929.

A border guard observed that Rodriguez was nervous and that both occupants of the car had needle marks on their arms, in the crook of the elbow. The inspector fed the license number and description of Rodriguez' car into a computer mechanism and got back information that the car was the subject of a narcotics lookout.

A search of Rodriguez' person and car produced no contraband. However, when his companion was told that she would be thoroughly searched, she voluntarily handed over a package containing ¾ of an ounce of heroin.

Rodriguez and Miss James were charged in the same indictment. Their trials were severed on the government's motion.

The government called Miss James as a witness in the case-in-chief against Rodriguez. She testified that he asked her to come to Tijuana with him and several other persons. The two of them made a heroin pickup in Tijuana and "shot up" together. The next day, they tried to smuggle the heroin into the United States. The plan was for him to supply the money and the heroin; she, the hiding place within her person.

On cross-examination, defense counsel asked her several questions relating to her "different treatment" stemming from the fact that Rodriguez was being tried separately from her. She categorically denied any knowledge of plea bargaining between the prosecutor and her counsel. She even denied having any hope of leniency.

Rodriguez took the stand and related a different version of the events. He testified that a large group of people went to Tijuana and Miss James came along. He denied buying or even seeing any heroin until she gave it up to the border authorities.

After the defense rested, the prosecutor called Miss James back to the stand as a rebuttal witness. As the prosecutor was about to broach a question about a conversation between her and her father before she went to Tijuana, defense counsel objected and the following dialogue took place:

MR. BLAKE: I am going to object, your Honor. This is a charge of conspiracy here. Unless it can be tied to this defendant, I submit—

THE COURT: Mr. Brannigan [Assistant U. S. Attorney]?

MR. BRANNIGAN: Your Honor, the testimony in this case indicates that this witness has made a recent fabrication. The Government is going to show prior inconsistent statements and the reason she might have for the fabrication.[1]

Miss James then testified that, on the night of November 19, 1970, she told her father of the forthcoming smuggling attempt.

Her father took the stand and corroborated her by repeating the substance of their talk. He further testified that he told his daughter and her younger brother, who was also present during the conversation, to go and take down a description and license number of Rodriguez' car. They did. He reported this information to law enforcement officials the next day. (This evidently led to the narcotics lookout being placed on Rodriguez' car.) Defense counsel did not object to testimony from the father about the conversation between him and Miss James.

Rodriguez alleges that the trial judge committed prejudicial error in allowing the rebuttal testimony of Miss James and her father. We disagree.

There is first the question whether defense counsel's objection was sufficient to challenge the admissibility of the conversation. From the dialogue quoted above, it is clear that defense counsel contended the statements were inadmissible because they were not made

---

1. Although he used the word "inconsistent," it makes no sense in the context. We think it is clear that the prosecutor used the term when he meant its opposite. The government and appellant have both proceeded on this assumption on appeal.

in furtherance of Miss James' alleged conspiracy with Rodriguez. Appellant's entire appeal brief is an attempt to take this situation out of the coconspirator exception to the hearsay rule, based on Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949).

However, it is also clear from the above quotation that the trial judge was presented with a second basis for admitting the testimony. The prosecutor argued that the testimony was proper rehabilitation of a witness after defense counsel had implied that her testimony was a recent fabrication.

The judge allowed the testimony without explicitly stating the ground on which he relied. Since he may have considered the evidence to be admissible on the ground submitted by the prosecutor, we deem the defense objection adequate basis for us to consider both grounds. If the testimony was admissible for either reason, there was no error. Because we find that the testimony was proper rehabilitation of a witness, it is not necessary to consider the other ground.

■ This court has stated that prior consistent statements are admissible to rehabilitate a witness "where it affirmatively appears that the prior consistent statement was made at a time when the declarant had no motive to fabricate." Lindsey v. United States, 237 F.2d 893, 895, 16 Alaska 268 (9th Cir. 1956). Accord: United States v. Grunewald, 233 F.2d 556 (2d Cir. 1956).

■ The conversation clearly antedated any motive Miss James might have had to fabricate a story in order to obtain leniency from the prosecution.

The circumstances of this case illustrate that the usual dangers of hearsay testimony do not attend this situation. Miss James' conversation with her father was not only related by her. Her father corroborated the substance of the conversation and acted upon the information in two ways. First, he instructed his daughter and his son to gather information on Rodriguez' car. Second, he reported the smuggling plan to the proper authorities. These facts effectively establish that Miss James, her father and her brother all acted on the substance of the conversation. That a smuggling plan did, in fact, exist was thereby rendered significantly more probable. And the jury was certainly aided by this reliable information.

Moreover, Miss James categorically denied having any information, from which a motive to fabricate might arise. She stated that she had no knowledge of any deal, or of any conversation between the prosecutor and her counsel; she even denied having the hope of leniency. Her response arguably might be viewed as sufficient, of itself, to negate the implication that her story was recently fabricated. No case dealing with this point has been cited to the court. Nor does our independent research disclose any reference, other than a brief statement in a recent Second Circuit case, to the effect that once a witness' motives for testifying "were questioned on cross-examination," then prior consistent statements are allowable. United States v. DeLaMotte, 434 F.2d 289, 293 (2d Cir. 1970). However, the details do not appear in the opinion.[2]

In the instant case, a charge of recent fabrication was implied in defense coun-

2. The Proposed Rules of Evidence for the United States Courts and Magistrates (Revised Draft March, 1971) include a rule which relates to the issue before us. Rule 801(d) provides:

"A statement is not hearsay if

(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the state-

ment is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . " 51 F.R.D. 315, 413 (1971).

Although the rule has not yet been adopted in its present form, we regard it as desirable law.

sel's cross-examination of Miss James concerning the possibility that she might have made a deal: her testimony incriminating Rodriguez in exchange for leniency. The very asking of such questions could have created the suspicion in the jurors' minds that the witness was lying about her primary testimony. It would have been foolhardy to ignore this effect, simply because Miss James answered the questions in the negative The trial judge did not err in allowing the prosecutor to rehabilitate the witness by showing a consistent statement made prior to the time when she might have had a motive to seek leniency by lying. Likewise, it was proper to allow her father to corroborate the conversation.

Affirmed.