UNITED STATES of America,
Plaintiff-Appellee,

v.

James ("Jake") ROHRER,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

John BUMP, Defendant-Appellant.

Nos. 82–1255, 82–1346.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 16, 1983.

Decided May 25, 1983.

As Amended June 16, 1983.

Dennis Aftergut, Eric J. Swenson, Asst. U.S. Attys., San Francisco, Cal., for plaintiff-appellee.

Doron Weinberg, Larson & Weinberg, J. Frank McCabe, Richard B. Mazer, San Francisco, Cal., for defendants-appellants.

Before MERRILL, CHOY, and SNEED, Circuit Judges.

SNEED, Circuit Judge:

James Rohrer and John Bump, co-defendants below and appellants in this court, were convicted of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a), and conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846. The district court denied their motions for a new trial and they filed timely appeals. We affirm.

## I.

### FACTS

The government's case rested primarily on the testimony of Stephen Green, a figure in a Bay Area drug network, who testified against the defendants after the government agreed to seek a reduction in his sentence, imposed as a result of his earlier conviction on drug charges. He described seven sales of cocaine involving Rohrer and five involving Bump. The government introduced hotel and car rental receipts, airline tickets, and customs records to support Green's testimony, but the only corroboration for the appellants' involvement were records of long-distance calls made to Rohrer and Bump during the alleged conspiracy.

Appellants attacked Green's credibility. Three defense witnesses testified to Green's heavy use of drugs and its debilitating effects. On cross-examination Green admitted his past drug usage and to having experienced blackouts during the conspiracy period.

Another government witness, paid informant William Northcutt, testified against Rohrer in return for reduction of charges against him in another drug case. Northcutt, like Green, had a history of drug use and dealing. Northcutt stated that he had twice obtained cocaine from Rohrer and on other occasions negotiated unsuccessfully for drugs. The only corroboration for Northcutt's charges were records of calls he made to Rohrer's phone number during the conspiracy period. Rohrer countered Northcutt's testimony by presenting against him a number of reputation witnesses, including his ex-wife and his sister.

Against Bump, the government introduced a weighing scale and several boxes of baggies seized from Bump's home on November 2, 1981, after his arrest. This seizure came fifteen months after the last offense on which he was charged. The items tended to support Green's charge that Bump kept a scale and baggies at home to use in distributing cocaine.

## II.

### QUESTIONS ON APPEAL

Rohrer and Bump first raise a variety of objections to jury instructions. Next they object to admission of Green's cooperation agreement with the government and of a sketch he drew of his drug distribution network, as well as to the exclusion of expert testimony on the effects of drug usage. They also assert that the court abused its discretion in striking post-trial affidavits that they feel demonstrate juror misconduct. Bump, on his own behalf, contends that the trial court abused its discretion in admitting the property seized in his home and in refusing to grant a limiting instruction when it ordered a rereading of testimony that pertained only to Rohrer. Finally, both Rohrer and Bump argue that even if this court holds harmless each of the alleged errors in isolation, the cumulative impact of these errors in a case resting largely upon uncorroborated accomplice testimony requires reversal. We find none of these arguments persuasive.

## III.

### JURY INSTRUCTIONS

Jury instructions must be analyzed in the context in which they are given—as part of the whole trial. *United States v. Abushi*, 682 F.2d 1289, 1299 (9th Cir.1982); *United States v. James*, 576 F.2d 223, 227 (9th Cir.1978). Furthermore, appellants must show not merely that the phrasing of the trial court was confusing, but that the phrasing amounted to an abuse of discretion. *Abushi*, 682 F.2d at 1299; *James*, 576 F.2d at 227.

■ Appellants have not made that showing here. We have reviewed the jury instructions in their totality and are convinced that each of appellants' complaints stems from a failure to consider the full instructions. All of the instructions but one are sufficiently free from error to preclude the need for specific mention.

■ Appellants' most nearly meritorious contention concerns an instruction that appeared to identify Green's credibility as the primary issue in this case.[1] An instruction that appears to reduce a criminal case to acceptance or rejection of a government witness' testimony may impermissibly lead the jury to forget that the defendant cannot be convicted unless guilty beyond a reasonable doubt. This mistake, if not corrected, can effectively deprive the defendant of his right to a jury trial. *See, e.g., United States v. Oquendo*, 490 F.2d 161, 164–66 (5th Cir.1974) (disapproving *"Blue"* charge of *United States v. Blue*, 430 F.2d 1286, 1286–87 (5th Cir.1970)). We are convinced, however, that the court adequately remedied any confusion by promptly reminding the jury of the proper burden of

1. The challenged instruction reads:
   In the case of Green, as I view it, you may totally disagree with all of my concepts with respect to Green, and you're certainly entitled to do so. But the question isn't whether his testimony about the existence of the conspiracy in general is true or not, there seems to be no doubt about the fact that—no dispute about the fact that such a conspiracy did exist and that Green was in the middle of an importing and a distribution conspiracy involving cocaine. As I understand the dispute here, it is over whether or not the two defendants that are before us were members of that conspiracy. Green says they were. The question I would pose is: does he have some motive to lie about that? Does he have some reason to put Mr. Bump and Mr. Rohrer into a conspiracy that they were in fact not involved in? You have to look to the evidence for that determination. On the state of the evidence, do you find anything to suggest that Mr. Green is lying on that statement.
   I would look to see whether you can find any motive to include them, if they were not in fact included, whether he's named them out of some lapse of memory. Has he named them as a product of a hallucination? Could he have been mistaken about their participation? If he wasn't mistaken, he must be

proof.[2] *Accord United States v. Pine*, 609 F.2d 106, 107–09 (3d Cir.1979); *United States v. Guest*, 514 F.2d 777, 779–80 (1st Cir.1975).

## IV.

### EVIDENTIARY RULINGS

■ A court's evidentiary rulings will be overturned only for abuse of discretion. *United States v. Patterson*, 678 F.2d 774, 778 (9th Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982). Even if error is found, the nonconstitutional errors alleged here would not require reversal unless it was "more probable than not" that they affected the verdict. Fed.R.Crim.P. 52(a); *United States v. Mehrmanesh*, 689 F.2d 822, 832 (9th Cir.1982); *United States v. Awkard*, 597 F.2d 667, 671 (9th Cir.1979), *cert. denied*, 444 U.S. 885, 100 S.Ct. 179, 62 L.Ed.2d 116 (1979); *United States v. Valle-Valdez*, 554 F.2d 911, 914–16 (9th Cir.1977).

### A. The Cooperation Agreement

Appellants argue that the admission of the "truthful testimony" portions of

deliberately saying they were involved. And if they in fact weren't involved, he must be deliberately lying on that point. And it's for you to decide whether the evidence indicates some basis for doubting that testimony because he had some motivation to lie about them.
   I would ask myself if there is other believable evidence in the case that supports the credibility or that contradicts the statements that are made by Mr. Green. After answering all of these questions and any other questions that suggest themselves to you, you'll have to decide how much, if any, of Mr. Green's testimony you're going to accept in this case.

2. Thus the instruction reproduced in note 1 *supra* continued:
   If after making that determination—that's what deciding the facts means. Is deciding what the evidence shows and what the credibility of the witnesses suggest to you—if after all of that you're left with a reasonable doubt about the guilt or innocence of either of the defendants on any charge, it's your duty to acquit on those charges. If, however, you conclude that there is no doubt on any charge or charges, then as to those charges it would be your duty to convict.

Green's cooperation agreement with the government and the latter's references to it at trial constituted impermissible vouching for Green. For support they cite *United States v. Roberts,* 618 F.2d 530, 533–34 (9th Cir.1980); *e.g., United States v. Gibson,* 690 F.2d 697, 702 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1446,.75 L.Ed.2d 801 (1983). In *Roberts* the prosecutor mentioned that a detective was monitoring the testimony of a government witness. The natural inference was that the government possessed information with which to measure the veracity of the witness. The court found the inference to amount to vouching, which it held to be improper. *Id.* at 533–34.

■ No such vouching occurred here. The government in no way put its prestige behind the witness; instead it was careful to ask the jury to look to the agreement to determine Green's motives. And it did not "implicitly" point to evidence outside the record. Neither the passages appellants cite from the trial transcript nor the cases cited in Rohrer's brief [3] support the claim of vouching. The court received the full text of the cooperation agreement into evidence only after appellants' extensive impeachment of Green's motives on cross-examination and their discussion of part of the agreement. There can be no doubt but that the agreement was relevant to material facts at issue and that the court acted correctly in permitting it to be introduced. *See United States v. Rubier,* 651 F.2d 628, 630 (9th Cir.), *cert. denied,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981). And it

was proper for the government to point to the cooperation agreement as a factor bearing on Green's credibility. *See United States v. Brooklier,* 685 F.2d 1208, 1218–19 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983); *United States v. Tham,* 665 F.2d 855, 861–62 (9th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 466 (1982).

## B. *The Prior Consistent Statements*

■ The court admitted as a prior consistent statement a diagram Green had drawn of his distribution ring. Fed.R.Evid. 801(d)(1)(B). Green drew the diagram, which implicated Rohrer and. Bump, just prior to signing his cooperation agreement. A prior consistent statement is admissible to rehabilitate a witness only if made before the witness has a motive to fabricate. *United States v. Rodriguez,* 452 F.2d 1146, 1148–49 (9th Cir.1972).[4] Appellants are correct in arguing that Green's motive to fabricate already existed when he drew his diagram. By drawing the diagram he sought to drive a better bargain with the government. Thus the diagram was inadmissible because it did not precede his motive to fabricate. It is not, however, "more probable than not" that its admission affected the verdict. Green's testimony lay at the heart of the trial and appellants were able to thoroughly examine all parts of his testimony in court. The diagram, which merely illustrated his other testimony, was unlikely to decide the case. Its admission does not constitute reversible error.

---

**3.** In *United States v. Carleo,* 576 F.2d 846, 851–52 (10 Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 153, 58 L.Ed.2d 152 (1978), the Tenth Circuit found that the prosecution's comments on the character of the defendant and a defense witness were merely summations of trial testimony. Any error in permitting the comments was harmless. *Id.* In *United States v. Ludwig,* 508 F.2d 140, 142–43 (10th Cir.1974), where there was reversible error, the district attorney had personally vouched for the integrity of the New Mexico state police, one of whose members was a star witness for the prosecution.

**4.** The government, noting a split in the circuits over whether the existence of a prior motive to fabricate determines the admissibility or only the weight of the statement, argues that this circuit has not taken a position on this issue.

. It claims that *Rodriguez* did not decide that the statement *had* to be made before the motive to fabricate. The government misinterprets *Rodriguez,* which established a narrow exception to the hearsay rule for statements "where it affirmatively appears that the prior consistent statement was made at a time when the declarant had no motive to fabricate." 452 F.2d at 1148. The court carefully analyzed the record to ensure that no motive to fabricate existed when the statement was made. *See id.* at 1148–49. In the absence of such assurances, the hearsay rule applies and the statement is inadmissible. Although *Rodriguez* predated the adoption of Rule 801(d), the court noted that its interpretation was harmonious with that Rule. *See id.* at 1148 n. 2.

■ Rohrer also objects to the admission of Northcutt's 1979 discussion of Rohrer's activities. These statements, unlike Green's, were properly admitted. Northcutt made them while negotiating for a cooperation agreement in an earlier trial. The motive to fabricate expired when its purpose was served. The statements were introduced to rebut the charge that Northcutt's present testimony was fabricated to encourage the government to agree to a cooperation agreement affecting this trial. The evil *Rodriguez* is designed to cure does not exist under these circumstances.

### C. *Expert Testimony*

■ The refusal by the trial court to allow experts to testify on the effects of drug usage like Green's was not improper. Although the credibility of a witness, unlike his competency, is a question for the jury, admission of expert psychiatric testimony bearing on credibility lies in the judge's discretion, *United States v. Bernard,* 625 F.2d 854, 860 (9th Cir.1980); *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir.1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Such testimony threatens to usurp the jury's function of determining guilt. *Id.* at 912–13. Here, where two of the psychiatrists had never met Green and the third, Dr. Nelson, had only met Green once in a social setting, there

was no abuse in deciding that the prejudicial value of their speculation on the effects of Green's drug use outweighed its probative value. See *Bernard,* 625 F.2d at 860. Dr. Nelson was allowed to testify as a percipient witness. There was no abuse of discretion.[5]

### V.

### JUROR MISCONDUCT

■ Appellants presented the affidavits of two jurors and of two private investigators who conducted post-trial interviews with some jurors. The jurors' affidavits testify to the jurors' individual or collective thought processes; the investigators' affidavits recount the same material second hand. Evidence concerning a jury's deliberations or a juror's reasoning are inadmissible to impeach a verdict. Fed.R.Evid. 606(b); *United States v. Freedson,* 608 F.2d 739, 741 (9th Cir.1979); *see generally United States v. Bagnariol,* 665 F.2d 877, 883–89 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). Rule 606(b) is designed to prevent precisely this kind of pressure on jurors. The judge properly refused to consider the affidavits.[6]

### VI.

### BUMP'S ALLEGATIONS

Three days after arresting Bump the government properly seized a scale with

5. Appellants' cases do not indicate otherwise. In *United States v. Hiss,* 88 F.Supp. 559, 560 (S.D.N.Y.1950), the district court held that psychiatric evidence was admissible to show insanity in the government's major witness, Whittaker Chambers. Green's sanity, however, was not at issue in this case. *United States v. Partin,* 493 F.2d 750, 762–65 (5th Cir.1974), *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977); *United States v. Honneus,* 508 F.2d 566, 573 (1st Cir.1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); and *United States v. Society of Indep. Gasoline Marketers,* 624 F.2d 461, 468 (4th Cir.1979), *cert. denied sub nom. Amerada Hess Corp. v. United States,* 449 U.S. 1078, 101 S.Ct. 859, 66 L.Ed.2d 801 (1981), each concerned the relevancy of hospital records of treatment for mental illness. The fact of past institutionalization and treatment does not invade the jury's function as does speculative testimony on the effects of a defendant's drug usage. Finally, *United States v. Lollar,* 606

F.2d 587, 588–89 (5th Cir.1979), and *United States v. Watson,* 669 F.2d 1374, 1381–83 (11th Cir.1982), both held opinion or reputation evidence admissible but did not discuss expert testimony. They are therefore not relevant to appellant's case.

6. The affidavits do not even support all of appellants' charges. For instance, they demonstrate that the jury foreman had a fear of arrest and incarceration for his drug use but not that he had been incarcerated. And they do not show that the foreman communicated his beliefs about drug use to the jury. Another indication of the unreliability of appellants' charges is that the foreman refused to sign an affidavit for appellants. We also do not consider the affidavit of counsel for Rohrer because we find his accusation that Green and Northcutt might have been imprisoned together amply refuted by the government's affidavit.

traces of cocaine and seven boxes of baggies in his home. The seizure came fifteen months after the last acts specified in one count against Bump and two and a half years after those in the other. The judge admitted the scale and the baggies as corroboration for Green's testimony. A government chemist later testified that he had found traces of cocaine on the scale. Bump argues that his possession of these items was not sufficiently close in time to the conspiracy to be admissible as evidence of other crimes or acts. Fed.R.Evid. 404(b); *see United States v. Bailleaux,* 685 F.2d 1105, 1110 (9th Cir.1982); *United States v. Brashier,* 548 F.2d 1315, 1325–26 (9th Cir. 1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977).

▇▇▇ We disagree. Possession of these items, even if considered as having been recently acquired, was admissible. *United States v. Uriarte,* 575 F.2d 215, 217 (9th Cir.), *cert. denied,* 439 U.S. 963, 99 S.Ct. 449, 58 L.Ed.2d 421 (1978), is instructive. There a 1972 arrest for possession of marijuana was admitted to show "material facts relating to the conspiracy and that the conspiracy was continuing along the same lines" in a 1975 arrest for possession and distribution of marijuana. The indictment in *Uriarte* had set no starting date for the conspiracy. The court found the prior arrest admissible to show a continuation of the conspiracy, on authority of *United States v. Bonanno,* 467 F.2d 14, 17 (9th Cir.1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973), and as proof of a plan, scheme, or modus operandi, as in *Brashier.* *Uriarte,* 575 F.2d at 217. Here the government alleged that the conspiracy extended until "at least" 1980.[7] Possession of items found little more than one year later is admissible on analogy to *Uriarte.* Moreover, possession of the unusual number of baggies was sufficiently probative to be admissible.[8]

---

7. An indictment cannot be completely open-ended, *see United States v. Cecil,* 608 F.2d 1294, 1296–97 (9th Cir.1979), but the indictments in this case were sufficiently specific to apprise appellants of the charged offenses and enable them to prepare a defense. There was no infirmity in their language. *See United*

▇▇▇ Bump also criticizes the judge's failure to give a limiting instruction when ordering the rereading of testimony that pertained only to Rohrer. Additional instructions are left to the discretion of the judge. *United States v. Tham,* 665 F.2d 855, 858 (9th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 466 (1982); *United States v. Collom,* 614 F.2d 624, 631 (9th Cir.1979), *cert. denied,* 446 U.S. 923, 100 S.Ct. 1862, 64 L.Ed.2d 278 (1980). The jurors described the portion of Northcutt's testimony they wanted reread as "concerning the acquiring of Bing Wa and Baked Alaska from Jake and/or Robin Rohrer." This indicates clearly that they did not associate Northcutt's testimony with Bump. The affidavits on the jurors' use of this evidence are, of course, inadmissible under Fed.R. Evid. 606(b), as already discussed. The court did not abuse its discretion in refusing the requested instruction.

## VII.

## CUMULATIVE EVIDENCE

▇▇▇ Appellants also argue that even if we can find no single reversible error, the cumulative weight of a series of near misses ought to compel reversal in a case such as this. We disagree. While conviction on the uncorroborated testimony of a single accomplice makes a defendant more likely to be prejudiced by errors than if the government had a stronger case, *United States v. Berry,* 627 F.2d 193, 201 (9th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981); *United States v. Hibler,* 463 F.2d 455, 458–59 (9th Cir.1972), here the jury had ample opportunity to weigh the testimony of Green and of Northcutt in the light of its corroboration as well as its impeachment. The government's case was not sufficiently weak to require reversal.

**AFFIRMED.**

*States v. Tavelman,* 650 F.2d 1133, 1137–38 (9th Cir.1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982).

8. Bump's other arguments against admission of these items do not merit discussion.