**UNITED STATES of America**

v.

**Elmer JONNET.**

Crim. No. 84–19.

United States District Court, W.D. Pennsylvania.

Oct. 24, 1984.

James Y. Garrett, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Leonard I. Sharon, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

TEITELBAUM, Chief Judge.

I. Subsequent to his conviction on three counts of making false declarations in a proceeding ancillary to a court of the United States in violation of 18 U.S.C. § 1623, defendant filed a host of motions and served a number of subpoenas duces tecum. The Court ruled on these matters prior to sentencing of defendant on October 12, 1984. The purpose of this memorandum opinion is to provide the grounds on which the Court relied in making those rulings.

II. *Motion for an Evidentiary Hearing*

Defendant presented two grounds in support of this motion:

First, defendant alleged that during trial Assistant United States Attorney James Y. Garrett, who represented the United States at trial, sought the admission into evidence of all three volumes of deposition testimony of the defendant in *Jonnet Development Corp. v. Caliguiri, et al.,* 558 F.Supp. 962 (1983). The Court deferred ruling on whether the jurors should have the complete deposition until the close of trial. Immediately after the jurors left the courtroom to begin deliberating, but before any exhibits had been delivered to them, the Court ruled that only certain excerpts from the deposition would be made available to the jurors.

According to the defendant, the exhibits shortly thereafter were delivered to the jurors by Richard Grainer, Administrative Aide. The three complete volumes of deposition testimony were not included among those items. Approximately one and one-half hours later, however, Mr. Grainer allegedly delivered all three volumes to the jurors without any request by the jury or notice to counsel.

Defendant claimed that the three volumes contained highly prejudicial material. One of the passages (which was not among these excerpted portions given to the jurors) contained an allegedly crucial typographical error. It incorrectly stated that the *defendant* had typed out the agreement of July 1, 1980 between Jonnet Development Corp. and Conrail. According to defendant, this particular passage was a "major factor" in the jurors convicting him.

Defendant further maintained that the Government made no attempt to correct

the typographical error even though it knew of the error through an interview conducted by an F.B.I. agent of Deborah Aschcom, the reporter who recorded the three volumes of deposition testimony in question.

As a second ground in support of his motion for an evidentiary hearing, defendant alleged that Bonita Lundquist, a juror, was incompetent to serve as a juror because of a hearing impairment.

Defendant's motion for an evidentiary hearing was granted. Two jurors testified as to the delivery by Richard Grainer to the jury room of the three complete volumes of deposition testimony. They further testified that they had not, however, read the three volumes of the deposition and knew of no other juror who did so. An alternate juror, Angeline Chieffo, testified that Bonita Lundquist had difficulty hearing normal conversation outside the courtroom. Finally, Richard Grainer testified that he had no recollection of delivering all three volumes of the deposition and indicated that it was not his customary practice to deliver additional exhibits at a later time.

■ The two jurors who testified as to the delivery of all three volumes of the deposition were not permitted, however, to testify as to whether the contents of those volumes in any way affected their verdict. Although jurors may testify as to the presence of so-called "extraneous" material in the jury room they may not testify as to its effect on their deliberations. Fed.R.Evid. 606(b); *also Government of Virgin Islands v. Gereau*, 523 F.2d 140, 148–149 (3d Cir.1975).[1]

III. *Motion for a New Trial.*

Defendant alleged that he was entitled to a new trial for a variety of reasons.

First, defendant argued that he was deprived of a fair trial because the jury was "swayed" by "highly prejudicial" material contained in the three complete volumes of deposition testimony.

This ground for a new trial was rejected for the following reasons.

■ When exhibits not in evidence reach the jury, a new trial should not be ordered unless the evidence was so prejudicial as to deny the defendant a fair trial. *U.S. v. Friedland*, 660 F.2d 919, 928 (3d Cir.1981).

■ To begin with, the passage in question was not prejudicial. Defendant argues that this typographical error was construed by the jury as an "admission" that he had typed the agreement. The claim that this would be a source of prejudice, however, is contrary to reality because the deposition testimony concerned only the events of July 1, 1980. The Government presented a wealth of testimony at trial concerning those events, and presented evidence that the agreement prepared on that date was handwritten by John Hindman. At no point was it any part of the Government's case that the defendant performed any physical role whatsoever in the act of drafting the agreement on that date, beyond affixing his signature. It defies logic to suggest that a statement so directly contradictory of the Government's case could be prejudicial to the defendant.

Even more important, regardless of who drafted the agreement on July 1, or how it was done, the crux of the case concerned what happened *thereafter* to account for the subsequently discovered difference between the Conrail and Jonnet versions of the agreement. Whether or not Jonnet "admitted" to typing an agreement on July 1 would have absolutely no bearing on what happened thereafter and could not help the Government prove that Jonnet had made alterations in his copy after the agreement was signed on July 1. In fact, not only would the statement cause no harm to Jonnet, it is far more likely that it would actually have helped him show his innocence. Evidence from any source that a typewriter was used to prepare the agreement on July 1 could only tend to show that the defendant's version of his

**1.** *Also Llewellyn v. Stynchcombe*, 609 F.2d 194, 195 (5th Cir.1980); *U.S. v. Duzac*, 622 F.2d 911, 914–915 (5th Cir.1980); *U.S. v. Rohrer*, 708 F.2d 429, 434 (9th Cir.1983).

agreement with Conrail was authentic rather than the Conrail version, which was handwritten rather than typewritten.

Since the Government had to disprove the authenticity of Jonnet's version in order to convict, it is clear that the deposition is entirely exculpatory with or without the typographical error. Defendant's claim of prejudice pays absolutely no regard to the evidence, the contentions of the parties, or the issues in the case. It is totally fallacious.

More importantly, even if the material were prejudicial, defendant was not deprived of a fair trial. There was overwhelming evidence to support the conviction, such as the testimony of others present at the drafting of the agreement of July 1, 1980 and of expert witnesses called by the Government.

Defendant also argued in support of a new trial that he was deprived of a fair trial because the Government knowingly presented false evidence to the jury and because the Government violated the Jencks Act, 18 U.S.C. § 3500, by failing to give to the defendant, after Ms. Aschcomb finished testifying, a copy of her statement to the F.B.I.

These grounds for a new trial also were rejected for the following reasons.

■ First of all, there was no evidence whatever that the Government knowingly presented false evidence to the jury.

■ Also, no violation of the Jencks Act occurred. Defendant failed at the close of direct examination of Ms. Aschcomb to ask the Court to order the Government to produce any statement by her in the Government's possession relating to the subject matter of her testimony. 18 U.S.C. § 3500(b). Consequently, the Government was not ordered to do so. In addition, the

F.B.I. report did not constitute a "statement" as defined at 18 U.S.C. § 3500(e). Finally, since there was no order to produce which the Government failed to obey, the provision authorizing sanctions against the Government does not apply here. 18 U.S.C. § 3500(d).[2]

■ The defendant also argued in support of a new trial that the incompetency of Bonita Lundquist to serve as a juror due to a hearing impairment violated his right to a fair trial and the requirement of 28 U.S.C. § 1865 that a juror may not be so infirm as to render unsatisfactory jury service.

No showing was made that Bonita Lundquist was unable to hear testimony offered in Court or to participate meaningfully in jury deliberations. Angeline Chieffo, who was not present during jury deliberations, testified only as to Ms. Lundquist's difficulty in hearing outside the courtroom.

Moreover, there is persuasive evidence that Bonita Lundquist's hearing problems presented no difficulty. To begin with, jury records indicate that she is employed as a bank teller. It is unlikely that she could be so employed if she had the sort of hearing impairment defendant alleges. Also, like all potential jurors, she was subjected to individual voir dire prior to trial. She answered all questions asked of her without apparent difficulty and was seated during trial immediately beneath a loudspeaker. Also, the jury was instructed in the preliminary charge that any juror having difficulty hearing testimony should notify the Court. Bonita Lundquist never indicated that she was having any difficulty.[3]

IV. *Motion to Dismiss with Prejudice for Prosecutorial Misconduct.*

Defendant argued that the Government "knowingly, intentionally, willfully, and

---

**2.** These remarks concerning the Jencks Act also apply to any argument defendant may be making that dismissal with prejudice is an appropriate sanction for violations of the Jencks Act.

**3.** It should be noted that defendant never called Bonita Lundquist to testify at the hearing. If defendant truly believed that she had a serious

hearing impairment, he reasonably could be expected to have subpoenaed her. This, as much as anything else, persuaded the Court that defendant's motions were frivolous and were designed by him as a pretext for delaying his sentencing.

maliciously" attempted to have the three complete volumes of deposition testimony delivered to the jury room, even though the Government knew them to be erroneous, misleading, and extremely prejudicial. Such conduct, defendant claims, deprived him of a fair trial and should be punished by dismissal with prejudice.

■ The motion was denied because no showing had been made that delivery of the three volumes was the result of any conduct by the Government, knowing, intentional, willful, malicious, or otherwise. Also, as was pointed out previously, the presence of the three complete volumes was not so prejudicial to the defendant as to deny him a fair trial because there was overwhelming evidence to support a conviction.

### V. Subpoena Duces Tecum Served Upon Assistant United States Attorney James Y. Garrett

The subpoena duces tecum served upon Mr. Garrett, who represented the Government at trial, requested him to bring "the entire case file" in this case.

■ The subpoena was quashed because it was overly broad. The request for the "entire case file" extends far beyond anything contemplated by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Jencks Act, Fed.R.Crim.P. 16 or Fed.R.Crim.P. 26.2. It was quashed also because it possibly would have required Mr. Garrett to disclose matters that were presented to the grand jury and, hence, would have violated the prohibition in Fed. R.Crim.P. 6(e)(2) against such disclosure.

### VI. Motion for this Court to Recuse and Service of Subpoena Duces Tecum upon the Honorable Hubert I. Teitelbaum.

Defendant contended that recusal was required by 28 U.S.C. § 455 in light of the fact that the Court would be required to rule on the testimony of its Administrative Aide and because, if Mr. Grainer indicated that the three volumes of the deposition

were delivered at the direction of the Court, then the Court might have to testify as to the matter. A subpoena then was served upon the Honorable Hubert I. Teitelbaum, who presided over this action.

28 U.S.C. § 455 provides in relevant part that:

(a) Any ... judge ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He also shall disqualify himself in the following circumstances:

(1) Where he has ... personal knowledge of disputed evidentiary facts concerning the proceedings.

■ Recusal is not required by § 455(a). The fact that Mr. Grainer might testify and the Court might have to rule on his testimony was not grounds for recusal. The mere fact that a Court might have to rule on the testimony of its Administrative Aide is not a reasonable ground for questioning the Court's impartiality.

■ Neither is recusal required by § 455(b)(1). The phrase "personal knowledge" means in this context "extrajudicial knowledge." *U.S. v. Coven*, 662 F.2d 162, 168 (2d Cir.1981). This Court has no knowledge whatever, extrajudicial or otherwise, concerning delivery of the three complete volumes of deposition testimony.

■ The subpoena served upon the Honorable Hubert I. Teitelbaum consequently was quashed because a judge presiding at a trial may not testify as a witness in that trial. Fed.R.Evid. 605.

### VII. Motion to Recuse the United States Attorney for the Western District of Pennsylvania.

Defendant contended that the United States Attorney for the Western District of Pennsylvania should be recused from participating in any evidentiary hearing because it would be necessary at that hearing for certain members of the United States Attorney's office for the Western District of Pennsylvania to explain the conduct engaged in by that office.

██ Although the defendant does not identify him by name, it is clear that the member of the United States Attorney's office referred to is Mr. James Y. Garrett. Since the subpoena duces tecum served upon Mr. Garrett was quashed, any problem that might arise from having the United States Attorney for the Western District of Pennsylvania participate in a hearing was avoided. The motion for recusal of the United States Attorney for the Western District of Pennsylvania therefore was denied.

VIII. *Motion to Order the United States Marshal To Seize Files Relating to this Case.*

Finally, defendant sought an order that the United States Marshal seize the files relating to this case that are in the possession of the United States Attorney and the F.B.I. Defendant alleged that the conduct of the Government raised a doubt as to whether the Government wished them to surface and contended that seizure by the United States Marshal was necessary to preserve the integrity of these documents. It is clear from the context of the motion that "these documents" referred to the F.B.I. report concerning Ms. Aschcom.

██ The motion was denied because the allegations underlying it were completely groundless. There was no evidence whatever that the Government did not wish this document to surface or that seizure by the United States Marshal was necessary to preserve its integrity. To the contrary, the Government made the report in question available by attaching it as an exhibit to its answer to these motions and the Court examined it.