951 F.2d 364
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
David McHENRY, Defendant-Appellant,
UNITED STATES of America, Plaintiff-Appellee,
v.
John GULDE, Defendant-Appellant.
 Nos. 90-10423, 90-10424.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1991.
Decided Dec. 27, 1991.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendants David McHenry and John Gulde were convicted of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371. Defendants appeal their convictions and the district court's award of restitution. In a separate, published opinion, we vacated the restitution award. In this memorandum disposition, we affirm the convictions. Rather than restate the factual background in full, we will highlight relevant facts when appropriate to the discussion. We have jurisdiction for this timely appeal under 28 U.S.C. § 1291.
 
 I. Sufficiency of the Evidence
 
 3
 Defendants contend that there was insufficient evidence to prove they had the specific intent to commit conspiracy. Our task is to determine whether, reviewing the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Orozco-Santillan, 903 F.2d 1262, 1265-66 (9th Cir.1990). We must "respect the province of the jury to ascertain the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." Id. at 1266 (quotations omitted). Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. United States v. Talbert, 710 F.2d 528, 530 (9th Cir.1983) (per curiam), cert. denied, 464 U.S. 1052 (1984).
 
 
 4
 To prove a conspiracy, the government must show: 1) an agreement to accomplish an illegal objective; 2) coupled with one or more acts in furtherance of the illegal purpose; and 3) the requisite intent necessary to commit the underlying substantive offense. United States v. Pemberton, 853 F.2d 730, 733 (9th Cir.1988). Both mail and wire fraud require a specific intent to defraud. Schreiber Distributing Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir.1986). This is proven by showing that the scheme was "reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. Bohonus, 628 F.2d 1167, 1172 (9th Cir.1980), cert. denied, 447 U.S. 928 (1980).
 
 
 5
 There is sufficient evidence of specific intent to execute a scheme to defraud. The advertisements contained several false and misleading statements of which defendants were aware. For example, the first advertisement guaranteed that the silver dollars were in an "uncirculated condition," but prosecution experts testified that the coins had been circulated. While the advertisement includes the word "condition," the term "uncirculated" denotes a specific quality that a coin possesses, and the persistent use of the term could lead a reasonable buyer to believe the ad referred to the quality, and not the physical condition of the coin. In fact, a defense expert testified that after reading the first ad, he believed the defendants were selling uncirculated coins. While the second advertisement contained the phrase "virtually uncirculated condition," this does not dilute an inference of intent because there are several other misstatements in the advertisement.
 
 
 6
 Both defendants admitted that the statement in the first ad claiming that the silver dollars contained "1 Troy ounce of .900 fine silver" was false. Moreover, while both ads claimed that national and world economists believe investing in silver dollars is one of the most secure investments, defendant McHenry could not provide documentation to support this claim and Gulde could not recall the names of the economists.
 
 
 7
 The first advertisement claimed that defendants "feel these coins have only been handled by bankers and mint personnel." The second advertisement states that there has been only "minor" handling by bankers or mint personnel. Defendant McHenry admitted, however, that these statements were not true. Indeed, experts for both parties believed that the coins were handled by more than just bankers and mint personnel.
 
 
 8
 In addition, both advertisements claimed that past performance indicates that the value of the silver dollar has increased 1000% in the past ten years. This is only partially true, however, because as defendants admit, only some silver dollars have increased during the last ten years. The ads did not distinguish between types of silver dollars when making this claim.
 
 
 9
 Finally, both advertisements listed a Reno, Nevada post office box, but the partnership is located in Phoenix, Arizona. Although defendants claim that the purpose was to encourage an association with the Old West, a reasonable person could infer that defendants intended to mislead the public into thinking that the coins came from the Carson City Mint.
 
 
 10
 While it is unlikely that any one of the above statements, standing alone, would support a finding of specific intent to defraud, taken together, and in the light most favorable to the government, the evidence is sufficient to establish a specific intent to defraud.[1] See United States v. Beecroft, 608 F.2d 753, 758-59 (9th Cir.1979) (sufficient evidence to prove specific intent to participate in fraudulent scheme when advertising material contained several deceptive "half truths" and false statements about company's staff and performance record). "As long as a sufficient number of the statements were shown to be knowingly false, deceptive or misleading to permit [the trier of fact] to infer that defendant[s] intentionally engaged in a scheme to defraud, the conviction must be affirmed." Lustiger v. United States, 386 F.2d 132, 136 (9th Cir.), cert. denied, 390 U.S. 951 (1968).
 
 
 11
 We also reject defendants' claim that the statements in the advertisements were mere puffing. There is a difference between exaggeration within reasonable bounds and substantial deception. Lustiger, 386 F.2d at 138. The advertisements contained numerous false and misleading statements, and the prospective purchasers had to rely on the advertisement to make the decision to buy the coins. See id. at 134-38 (no puffing when scheme involved sale of land through brochures and brochures contained false and misleading statements because prospective purchasers relied on them). "[W]hen a proposed seller ... assigns to the article qualities which it does not possess, does not simply magnify an opinion the advantages which it has, but invents advantages and falsely asserts their existence, he transcends the limits of "puffing" and he engages in false representations and pretenses." United States v. New South Farm and Home, 241 U.S. 64, 71 (1916).
 
 II. Jury Instructions
 
 12
 Defendants allege three specific errors with regard to the jury instructions: (1) the trial court did not adequately instruct on specific intent; (2) the trial court did not adequately instruct on the good faith defense; and (3) the trial court improperly refused to give certain requested instructions. We will address each contention in turn.
 
 
 13
 This court reviews a district court's formulation of jury instructions for abuse of discretion. United States v. Beltran-Rios, 878 F.2d 1208, 1214 (9th Cir.1989). If an objection is not timely and distinctly stated, the court reviews for plain error. United States v. Sanchez, 914 F.2d 1355, 1358 (9th Cir.1990), cert. denied, 111 S.Ct. 1626 (1991). We must determine "whether, considering the charges as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988). The government claims that the defendants did not make a proper and timely objection to the jury instructions. We need not address this issue because under either standard, the instructions were sufficient and adequate.
 
 A. Specific Intent Instruction
 
 14
 Defendants contend that the judge's failure to give the definition of specific intent within the body of the conspiracy charge rendered the instructions inadequate. This contention does not have merit. The instructions as a whole fairly apprised the jury of the requisite elements of each crime. See United States v. Garcia-Rodriguez, 558 F.2d 956, 965-66 (9th Cir.1977) (instructions must "fairly and adequately" explain charges), cert. denied, 434 U.S. 1050 (1978). The trial judge mentioned the element of specific intent twice in connection with the conspiracy charge--once during the instructions on conspiracy and then again at the very end of the instructions. See id. at 965 (total instructions adequate when judge mentioned specific intent at least three times). The fact that the trial judge chose not to define specific intent until the end of the instructions does not render the instructions inadequate. Specific intent is an element of all the crimes charged in the indictment; it is not unreasonable to define that element at the very end of the instructions.
 
 B. Good Faith Instruction
 
 15
 Defendants next contend that the trial judge's refusal to give their proposed instruction, in conjunction with the placement of the court's version of the defense at the end of the instructions and the "inadequate" specific intent instruction, constitutes reversible error because the jury was confused as to the necessity of finding specific intent to defraud in order to convict the defendants of conspiracy. This contention has no merit.
 
 
 16
 It is well settled that the trial judge has substantial latitude in tailoring jury instructions, id., and is not bound by the precise wording requested by the defendant. United States v. Gering, 716 F.2d 615, 622 (1983). The trial judge may refuse to give a proposed instruction provided that the instructions as a whole adequately cover the defendant's theory. United States v. Makhlouta, 790 F.2d 1400, 1405 (9th Cir.1986).
 
 
 17
 Although the trial judge did not give the defendants' proposed instruction, he did give a thorough instruction explaining the defense.[2] In United States v. Gering, 716 F.2d 615 (9th Cir.1983), this court approved a good faith instruction that contained a less explicit definition and statement of the burden of proof. Id. at 622. While the court noted that a more detailed instruction is preferable, the "preferred" formulation is almost identical to that given by the trial judge in the present case. See id.
 
 C. Other Requested Instructions
 
 18
 Finally, defendants contend that the trial judge's refusal to give three requested instructions, in conjunction with the above alleged errors, constitutes reversible error. All three arguments are meritless. First, the trial judge properly refused to give an instruction on seller's "puffing." The instruction regarding good faith sufficiently covers the theory because puffing involves a good faith statement or opinion of the qualities an item possesses.
 
 
 19
 Second, the trial judge correctly refused to give defendants' instruction regarding the effect of their refund policy because it was a misstatement of the law. Contrary to defendants' assertion, a liberal refund policy only represents evidence of good faith; it does not automatically negate a finding of intent to defraud. See Lustiger, 386 F.2d at 138.
 
 
 20
 Third, defendants requested an instruction stating that the jury must believe beyond a reasonable doubt that defendants had actual knowledge of certain documents introduced to show fraudulent intent. The instructions are clear that the jury must believe beyond a reasonable doubt that defendants acted with specific intent. To find specific intent beyond a reasonable doubt, the jury must believe defendants had actual knowledge of these documents. The judge's refusal was proper.
 
 III. Denial of Motion for a Mistrial
 
 21
 Defendants argue that the district court abused its discretion by not granting a mistrial after the jury twice indicated that it was deadlocked, and that its statements to the jury regarding deadlock coerced the jury to render a compromise verdict.
 
 A. Motion for Mistrial
 
 22
 We review for abuse of discretion a district court's decision to deny a motion for a mistrial when the jury has reached a deadlock. United States v. Sommerstedt, 752 F.2d 1494, 1497 (9th Cir.1985), cert. denied, 474 U.S. 851 (1985). The district court's decision is given great deference because his position enables him to analyze relevant factors. Arizona v. Washington, 434 U.S. 497, 509-10 (1978). The trial judge should consider "the jury's collective opinion that it cannot agree, the length of the trial and complexity of the issues, the length of time the jury has deliberated, whether the defendant has made a timely objection to the mistrial, and the effects of exhaustion or coercion on the jury." Rogers v. United States, 609 F.2d 1315, 1317 (9th Cir.1979).
 
 
 23
 The district court did not abuse its discretion. The jury deliberated approximately 6 hours over the span of 2 days before giving the first note indicating deadlock. The note read:
 
 
 24
 What do we do if it appears that we will not be able to reach an unanimous verdict based on the evidence, no matter how long we are allowed to deliberate?
 
 
 25
 In response, the trial judge stated: "please continue your deliberations in accordance with the instructions." Defendants did not object to this instruction. The jury continued deliberations for approximately 5 more hours, at which time they informed the judge they had again reached a deadlock. By the time the jury sent the second note, it had deliberated approximately ten or eleven hours. At the end of the day, the jury foreman indicated that it might be able to reach a verdict as to some of the counts, and the judge therefore told the jury to return the following morning.
 
 
 26
 The jury had nine days of testimony to evaluate, and twenty-eight counts and three defendants to consider, yet it had deliberated for only ten or eleven hours. See Sommerstedt, 752 F.2d at 1498 (no abuse of discretion when judge required jury to deliberate more than one day and trial lasted only three days). "A jury's statement that it currently is deadlocked is, by itself, an insufficient ground for declaring a mistrial." Id. at 1498. Indeed, after the second note to the judge, the jury foreman indicated that they might be able to reach a verdict as to some of the counts. See Rogers, 609 F.2d at 1317 ("[t]he crucial factor is the jury's statement that it cannot agree," and the likelihood of overcoming the current deadlock). Because the evidence indicates that the jury was not exhausted, we find no abuse of discretion in denying defendants' motion for mistrial.
 
 B. Coercion of the Jury
 
 27
 In determining whether the trial court's statements to the jury were coercive, the statements must be considered "in ... context and under all the circumstances of th[e] case." United States v. Ramirez, 710 F.2d 535, 544 (9th Cir.1983). "[T]he trial court may not insist upon a dispositive verdict." Id. Defendants argue that the two notes not dealing with deadlock indicate the jury's confusion regarding the instructions, and that this confusion, coupled with the judge's request to continue deliberating, coerced the jury to render a compromise verdict.
 
 
 28
 We agree with the government, however, that the notes indicate that the jury was "conscientiously pursuing its duty" by asking questions about the law. See United States v. Bi-Co Pavers Inc., 741 F.2d 730, 733 (5th Cir.1984) (notes to judge concerning various questions of relevant law suggested jury merely pursuing its duty to decide the case). The trial judge did not tell the jury they must reach a dispositive verdict. See Ramirez, 710 F.2d at 544 (no coercion when judge stated that jury's inability to reach verdict as to one defendant was "unacceptable"). When he received the first note indicating deadlock, the trial judge referred the jury to the instructions given at the close of the trial and requested that they continue deliberating. See United States v. Frazin, 780 F.2d 1461, 1470 (9th Cir.1986) (no coercion when judge merely asked jury to continue deliberations), cert. denied, 479 U.S. 839 (1986).
 
 
 29
 Moreover, the jury's response to the court's instructions indicate that the verdict was not coerced. After the trial judge sent the jury back for the second time, the jury deliberated for approximately five hours. See Ramirez, 710 F.2d at 544 (verdict not coerced when jury deliberated for one day after court asked them to continue); Frazin, 780 F.2d at 1470 (no coercion when jury deliberated three and one-half hours after receiving an Allen charge).
 
 
 30
 We also reject defendants' contention that the verdict was coerced because the trial judge refused to re-instruct the jury as to the government's burden of proof, and to remind them not to give up honestly held beliefs in order to reach a verdict.[3] This court has required such "counterbalancing" instructions only in the Allen charge[4] situation in order to insure that the charge does not coerce the verdict. Because the instruction in the instant case was not an "Allen" charge, and because trial courts are given wide latitude in framing jury instructions, cautionary instructions were unnecessary.
 
 
 31
 C. Admissibility of Juror Affidavits to Prove Coercion
 
 
 32
 Federal Rule of Evidence 606(b) prohibits juror testimony to impeach a verdict. "Testimony of a juror concerning the motives of individual jurors and conduct during deliberation is not admissible. Juror testimony is admissible only concerning facts bearing on extraneous influences on the deliberation, in the sense of overt acts of jury tampering." United States v. Pimentel, 654 F.2d 538, 542 (9th Cir.1981).
 
 
 33
 The affidavits in this case are not offered to demonstrate an "extraneous influence" on deliberation. Rather, they are offered to show an individual juror's thought process and motivation in reaching the verdict. See United States v. Rohrer, 708 F.2d 429, 434 (9th Cir.1983) (juror affidavits inadmissible to demonstrate juror misconduct because they "testify to the jurors' individual or collective thought processes). The judge's statements to the jury, because made during the normal course of the trial, are not analogous to extraneous influences such as jury tampering.
 
 
 34
 IV. Denial of Motions for Judgment of Acquittal and New Trial
 
 
 35
 In reviewing a district court's denial of a motion for judgment of acquittal, we must determine whether, considered in the light most favorable to the government, there was sufficient evidence from which the jury could rationally conclude beyond a reasonable doubt that the defendants were guilty of each count charged. United States v. Toomey, 764 F.2d 678, 680 (9th Cir.1985), cert. denied, 474 U.S. 1069 (1986). We review a district court's refusal to grant a new trial for abuse of discretion. United States v. Shaffer, 789 F.2d 682, 687 (9th Cir.1986).
 
 A. Motion for Judgment of Acquittal
 
 36
 Fed.R.Crim.P. 29(a) requires the trial court to grant a motion for judgment of acquittal only "if the evidence is insufficient to sustain a conviction of such offense or offenses." For the reasons stated in part I, we find that the district court did not abuse its discretion in denying defendants' motion for acquittal.
 
 B. Motion for New Trial
 
 37
 Upon motion, a district court may grant a new trial "if required in the interests of justice." Fed.R.Crim.P. 33. Viewing the evidence in the light most favorable to the government, the trial judge did not abuse his discretion. As stated in part III, the length of the trial and complexity of the issues support his decision to ask the jury to continue deliberations. Moreover, the judge did not coerce the jury by failing to repeat instructions regarding the government's burden of proof and the necessity of not giving up honestly held beliefs in order to reach a verdict. The original instructions informed the jury as to these two points; it was not necessary to repeat them in supplemental instructions. See Frazin, 780 F.2d at 1470 (no coercion when judge merely asked to continue deliberations but apparently did not re-instruct on issue of good faith and honest beliefs).[5]
 
 V. Limiting Instructions
 
 38
 Because defense counsel failed to make a timely and distinct objection to a limiting instruction regarding the use of a codefendant's testimony, we review the district court's instruction for plain error. United States v. Sanchez, 914 F.2d 1355, 1358 (9th Cir.1990). "Plain error is found only in exceptional circumstances, when the error is highly prejudicial, affects substantial rights, and it is highly probable that it materially affected the verdict." Id.
 
 
 39
 Immediately after codefendant Sharon White's testimony, the trial judge instructed the jury that her guilty plea "should not carry over with respect to the other defendants. It'll be your decision to make based on the evidence and the instructions on the law that I'll give the jury at the end of the case whether they are guilty or not guilty." Although he did not give as explicit an instruction in the closing instructions, the trial judge did remind the jury to obey all limiting instructions given during the trial.
 
 
 40
 Defendants contend that the trial judge erred by failing to mention specifically that the testimony can be considered only on the issue of Ms. White's credibility, and by failing to repeat the precise instruction at the end of the trial. Defendants are incorrect. The trial court is not required to mention the word "credibility," but rather to make it clear that the guilty plea cannot be used as evidence of guilt. United States v. Rewald, 889 F.2d 836, 865 (9th Cir.1989), cert. denied, 111 S.Ct. 64 (1990). While the instructions were not the model of clarity, it is not "highly probable that [the instruction] materially affected the verdict." Sanchez, 914 F.2d at 1358.[6] The record contained substantial evidence from which a reasonable juror could infer guilt.
 
 
 41
 In addition, the trial court satisfied the timing threshold by giving the instruction immediately following the codefendant's testimony, even though it did not repeat the precise instruction during the final instructions. Rewald, 889 F.2d at 865 (although it is preferable to give the charge both immediately after the testimony and in the final instructions, failure to do both is not error).
 
 VI. Evidentiary Rulings
 
 42
 Evidentiary rulings involving relevancy are reviewed for abuse of discretion. United States v. Catabran, 836 F.2d 453, 456 (9th Cir.1988). An evidentiary ruling will be reversed for abuse of discretion only if the nonconstitutional error more likely than not affected the verdict. United States v. Owens, 789 F.2d 750, 757 (9th Cir.1986), reversed on other grounds, 108 S.Ct. 838 (1988).
 
 A. Admission of Exhibits 35 and 36
 
 43
 It was not error to admit exhibits 35 and 36. "Evidence relevant to the existence and aims of [a] conspiracy is admissible." United States v. Uriarte, 575 F.2d 215, 218 (9th Cir.) (testimony concerning other criminal activity in which defendant was involved was relevant to existence of conspiracy), cert. denied, 439 U.S. 963 (1978). Exhibits 35 and 36 consisted of two trunks filled with silver dollars seized from Gulde's place of business while Postal Inspectors were executing a search warrant. Because Carson City Reserve frequently purchased its coins from Gulde's business, the evidence was relevant to show the existence of a conspiracy to commit mail and wire fraud.
 
 B. Exclusion of Exhibit 56
 
 44
 Exhibit 56 consisted of one silver piece (not a silver dollar) marketed by other coin dealers "as a silver piece" during the time defendants ran their advertisements. We find that the trial judge did not abuse his discretion in excluding the silver piece. The fact that other coin dealers were marketing a silver piece which was totally different from the coin marketed by defendants does not make the existence of their good faith any more or less probable. The exhibit is irrelevant.
 
 
 45
 C. Testimony Concerning the Value of a Silver Dollar
 
 
 46
 Defendants contend that the testimony of a customer concerning the resale of coins originally purchased from Carson City Reserve should have been excluded as prejudicial. This claim is unpersuasive. Because the coins sold by defendants were unappraised, the market value of the coins was directly relevant to show fraud and intent. While the testimony may indeed prejudice the defendants, the probative value is not outweighed by the prejudice. The trial court did not abuse its discretion in admitting the testimony.
 
 
 47
 VII. Effect of Prosecutor's Statements During Closing Argument
 
 
 48
 Because defendants did not make a timely and distinct objection, we review the decision to allow a jury to consider comments made by the prosecutor in closing argument for plain error. United States v. Gwaltney, 790 F.2d 1378, 1383 (9th Cir.1986), cert. denied, 479 U.S. 1104 (1987). In determining the propriety of a prosecutor's statements, we must "give considerable weight to the determination of the trial judge, who saw and heard the actual events, and found no prejudice." Pimentel, 654 F.2d at 543 (quotations omitted).
 
 
 49
 In his closing argument, the prosecutor stated that there were 20,000 victims in the present case. The parties stipulated, however, that defendants mailed coins to approximately 20,000 individuals. Thus, it is not unreasonable to argue to the jury that all customers were victims of the alleged conspiracy and fraud charges. Because the comment is based on information to which both parties agreed, it is reasonable to conclude that the prosecution was merely stating the scope of the conspiracy. See United States v. Solomon, 825 F.2d 1292, 1300 (9th Cir.1987) (remarks not excessive even when they suggested that the government knew of additional criminal violations by defendants because could be interpreted as comment on scope of conspiracy), cert. denied, 484 U.S. 1046 (1988). The trial court's decision to allow the jury to consider this comment is not plain error.
 
 VIII. Conclusion
 
 50
 We AFFIRM the convictions and VACATE the restitution award.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Appellants assert that they modeled their advertisements after similar ads running nationwide without any apparent legal violations. They contend that such reliance demonstrates their lack of intent to defraud. This is unpersuasive given the testimony admitting that some statements in their advertisements were false
 
 
 [2]
 The judge instructed the jury as follows:
 "Good faith on the part of the defendant in the plan which the government has alleged to be fraudulent, and a good faith intention to carry out the promises and representations made constitute a defense to the crimes charged. If the evidence leaves you with a reasonable doubt whether a defendant entertained such good faith, you must then find that defendant not guilty."
 
 
 [3]
 The trial judge instructed the jury on these two points in the original instructions. Thus, when the trial judge asked the jury to re-examine the instructions, he indirectly satisfied appellants' request
 
 
 [4]
 An Allen charge reminds the jury of the importance of reaching a verdict and to reconsider unreasonable positions. United States v. Mason, 658 F.2d 1263, 1265 n. 1 (9th Cir.1981)
 
 
 [5]
 Appellants' contention that the verdict is inherently inconsistent, and that such inconsistency requires reversal, is incorrect. See United States v. Prueitt, 540 F.2d 995, 1006 (9th Cir.1976) (conviction for conspiracy and acquittal on underlying substantive offense not inconsistent), cert. denied, 429 U.S. 1063 (1977); United States v. Duz-Mor Diagnostic Laboratory, Inc., 650 F.2d 223, 226 n. 3 (9th Cir.1981) (inconsistent verdicts do not necessarily require reversal)
 
 
 [6]
 Contrary to defendants' assertions, United States v. Halbert, 640 F.2d 1000 (9th Cir.1981), does not control the instant case. In Halbert, the trial judge gave instructions substantially similar to those in the present case and the court reversed because it did not believe "a reasonable juror would understand the limited use to be made of the evidence in the pleas." Id. at 1007. The distinguishing factor here, however, is the standard of review. Given the substantial evidence in the record, we cannot say the instruction constituted plain error