NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 11 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff-Appellee,<br><br> v.<br><br>CHARLES HEARD, AKA Cheese,<br><br>          Defendant-Appellant. | No.  18-10218<br>No.  18-10228<br>No.  18-10239<br>No.  18-10248<br>No.  18-10258<br><br>D.C. Nos.<br>3:13-cr-00764-WHO-7<br>3:13-cr-00764-WHO-11<br>3:13-cr-00764-WHO-8<br>3:13-cr-00764-WHO-10<br>3:13-cr-00764-WHO-5<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted October 19, 2021
Submission Vacated October 27, 2021
Resubmitted July 11, 2022
San Francisco, California

Before:  BADE and BUMATAY, Circuit Judges, and BERMAN,[**] District Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Richard M. Berman, United States District Judge for the Southern District of New York, sitting by designation.

In these consolidated appeals, Defendants-Appellants Charles Heard, Jaquian Young, Esau Ferdinand, Monzell Harding, Jr., and Adrian Gordon challenge their convictions and sentences for various crimes arising from their participation in the Central Divisadero Playas ("CDP"), a street gang operating in San Francisco's Fillmore District. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm, in part, and vacate and remand, in part.[1]

1. *Motions to Sever Trial and for New Trial*. Ferdinand and Young appeal the district court's denial of their motions to sever, and their motions for new trial. *See* Fed. R. Crim. P. 14. "Criminal defendants bear a heavy burden when attempting to obtain reversal of a district court's denial of a motion to sever." *United States v. Johnson*, 297 F.3d 845, 855 (9th Cir. 2002). We reverse "only when the joint trial was so manifestly prejudicial as to require the trial judge to exercise his discretion [on the motion to sever] in just one way, by ordering a separate trial." *Id.* (alteration in original) (internal quotation marks omitted).

The district court recognized the correct legal standard, and its application of that standard was not illogical, implausible, or lacking support in the record. *United States v. Espinoza*, 880 F.3d 506, 511 (9th Cir. 2018). Trying Ferdinand and Young together was not "so manifestly prejudicial" as to mandate separate

---

[1] We grant the Appellants' unopposed motions for judicial notice. Dkts 34, 44. *See* Fed. R. Civ. P. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

trials. Their defenses were not mutually exclusive, considering evidence of possible third-party involvement. *See United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991) (explaining that mutually exclusive defenses occur when two defendants claim innocence but blame each other and the "acquittal of one codefendant would necessarily call for the conviction of the other").

Ferdinand complains that he was prejudiced by the testimony Young's counsel elicited on cross-examination of the government's witnesses, but these isolated instances did not give rise to "compelling prejudice necessary to mandate a severance." *United States v. Sherlock*, 962 F.2d 1349, 1363 (9th Cir. 1992). Nor did the testimony of a government informant who did not refer to Ferdinand. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993) (indicating that *Bruton* error could give rise to risk of prejudice sufficient to warrant separate trials); *Mason v. Yarborough*, 447 F.3d 693, 695 (9th Cir. 2006) ("*Richardson* . . . specifically exempts [from *Bruton*] a statement, not incriminating on its face, that implicates the defendant only in connection to other admitted evidence.").

Young and Ferdinand also challenge the district court's treatment of Tierra Lewis's testimony and the admission of Exhibit 779, on which Lewis had circled an image of Ferdinand in a photographic lineup and wrote that Ferdinand, "E. Sauce," shot Jelvon Helton, "Poo Bear." Under the circumstances of this case, the district court's rulings regarding Lewis's testimony and the photo lineup were a

3

reasonable exercise of its discretion and a reasonable application of Rules 403 and 801(d)(1) of the Federal Rules of Evidence. *See United States v. Flores-Blanco*, 623 F.3d 912, 919 and n.3 (9th Cir. 2010) (Rule 403); *United States v. Collicott*, 92 F.3d 973, 978 (9th Cir. 1996) (as amended) (hearsay exceptions). Those rulings did not violate Young's constitutional right to present a defense, *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), or to argue that defense to the jury, *Herring v. New York*, 422 U.S. 853, 859 (1975). Young was able to present the substance of his defense through witness testimony, cross-examination, and during closing argument.

Further, the court minimized the prejudicial effect of Lewis's testimony and the photographic evidence against Ferdinand by giving limiting instructions that Ferdinand has not shown to be deficient. *See United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004) (limiting instructions important factor for determining prejudice related to severance), *as modified*, 425 F.3d 1248 (9th Cir. 2005); *Johnson*, 297 F.3d at 856. Additionally, while Young did argue that Lewis had identified someone besides him as Jelvon Helton's shooter, Young also highlighted other weaknesses in the government's evidence related to that incident.

We conclude that it was not an abuse of discretion to deny the motions for severance or the related new trial motions.

2.      *Motions to Suppress.* The district court did not err in denying

4

Young's motion to suppress evidence found during a warrantless search of his car. The district court correctly concluded that the search fell within the automobile exception to the Fourth Amendment. *See United States v. Faagai*, 869 F.3d 1145, 1150 (9th Cir. 2017) (discussing warrantless searches of automobiles). The police officers had probable cause to believe that the car contained contraband or evidence of a crime, at least as to the car's passenger, when he had marijuana on his person immediately after exiting the car, and he tried to discard the car keys. *See United States v. King*, 985 F.3d 702, 707 (9th Cir. 2021) (discussing probable cause).

The district court did not err in denying the motion to suppress recordings of informant Marshall's June 18, 2014 conversations with Young. Marshall surreptitiously recorded conversations during which Young discussed pimping conduct for which he had already been charged and other topics pertaining to uncharged conduct. The district court found that the government violated the Sixth Amendment and suppressed Young's statements about the charged pimping conduct. *See Massiah v. United States*, 377 U.S. 201, 206 (1964) (holding that after a defendant's right to counsel has attached, the government violates the Sixth Amendment when it uses against the defendant his own incriminating statements that the government deliberately elicited in the absence of his counsel, either directly or through an informant).

5

The district court did not suppress Young's statements about uncharged conduct. Its ruling did not violate the Sixth Amendment, which is "offense specific" and "does not attach until a prosecution is commenced." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991); *see United States v. Hayes*, 231 F.3d 663, 676 (9th Cir. 2000) (en banc) (holding that the admission at trial of "surreptitiously" recorded statements did not violate the Sixth Amendment when formal charges had not been initiated). Additionally, for evidence to be suppressed as the fruit of a *Massiah* violation, it "must at a minimum have been the 'but for' cause of the discovery of the evidence." *United States v Kimball*, 884 F.2d 1274, 1279 (9th Cir. 1989) (as amended). Young failed to show the required causal link.

3. *Other Evidentiary Rulings*. The district court did not abuse its discretion by admitting evidence of the so-called silver van robberies. "In conspiracy prosecutions, the government has considerable leeway in offering evidence of other offenses" not charged in the indictment. *United States v. Bonanno*, 467 F.2d 14, 17 (9th Cir. 1972) (evidence of prior illegal acts "admissible to show some material facts relating to the conspiracy charged"). This evidence was relevant to prove the existence of the CDP enterprise and to connect Harding to both the enterprise and to concerted criminal conduct with co-defendant and CDP affiliate Gordon. *See United States v. Rizk*, 660 F.3d 1125, 1131–32 (9th Cir. 2011) ("[U]ncharged acts may be admissible as direct evidence of the

6

conspiracy itself." (quoting *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994))).

The district court permissibly excluded Dr. Pezdek's expert testimony regarding eyewitness identifications. The expert disclosure was untimely, and, under Rule 403, the court had the discretion to balance the probative value of the proffered testimony against prejudice to the government and the risk of juror confusion. *See United States v. Rincon*, 28 F.3d 921, 925–26, 925 n.6 (9th Cir. 1994) (affirming exclusion of expert testimony under Rule 403). While the expert's testimony may have been "informative," the court provided a comprehensive jury instruction discussing many of the same factors regarding eyewitness testimony "to guide the jury's deliberations." *Id.* at 925.

The district court did not abuse its discretion by denying a motion under 28 U.S.C. § 2241(a) for a writ of habeas corpus ad testificandum for Timon O'Connor, who was proffered to impeach the government's cooperating witness—Brown. The court considered the factors relevant to issuing such a writ. *See Wiggins v. Alameda County*, 717 F.2d 466, 468 n.1 (9th Cir. 1983) (per curiam). Heard failed to provide reliable information as to several of those factors, and the proffered testimony would not have "substantially further[ed] the resolution of the case," *id.* (internal quotation marks omitted), because it was cumulative. The district court's ruling did not infringe Heard's right to present a defense. *See Taylor v. Illinois*, 484 U.S. 400, 410

(1988) (right to offer witness testimony is not "unfettered"). Heard and the other appellants were able to pursue the theory that Brown was an untrustworthy criminal on cross-examination.

Over Young's objection, the district court admitted informant Marshall's notes of his unsuccessfully recorded jailhouse conversations with Young to rehabilitate Marshall on re-direct examination under Rule 801(d)(1)(B). On appeal, Young argues that Marshall had a motive to lie—his cooperation agreement with the government—that arose before, and continued during, the time he made the notes. *See Tome v. United States*, 513 U.S. 150, 167 (1995) (holding that Rule 801(d)(1)(B) includes the "common-law premotive rule" that prior consistent statements were admissible to rebut a charge of recent fabrication or improper motive or influence, only if the statements were made before the motive to lie arose). The government argues that Marshall had no way of knowing whether the recordings were successful at the time he made his notes and, thus, he had a motive to be truthful.

Even if the court erred in admitting Marshall's notes, which we do not decide, it is not "more probable than not" that their admission affected the verdict. *See United States v. Rohrer*, 708 F.2d 429, 432 (9th Cir. 1983) (as amended). Marshall's testimony, including his notes, was central to the government's case, but Appellants were able to thoroughly cross-examine him. Additionally, other

portions of Marshall's testimony implicated Young, as did other evidence connecting Young to the murder of Jelvon Helton. Thus, the notes were "unlikely to decide the case," *id.* at 433, and their admission does not constitute reversible error.

The district court did not abuse its discretion in admitting evidence of the uncharged Levexier murder. Gordon relies on *United States v. Murray*, arguing that "evidence in a murder trial that the defendant committed another prior murder poses a high risk of unfair prejudice." 103 F.3d 310, 319 (3d Cir. 1997). Unlike the defendant in *Murray*, Gordon was not charged with murder, and the evidence was relevant to prove the gang rivalry between CDP and KOP and Gordon's association with CDP, as opposed to proving Gordon's "homicidal character." *See id.* at 316–17. Gordon's other arguments challenging the admission of the murder are not persuasive.

Moreover, even if the court erred in admitting the related autopsy photographs, which we do not decide, it is not "more probable than not" that their admission affected the verdict. *See Rohrer*, 708 F.2d at 432. The photographs were one piece of evidence during a weeks-long trial, and other evidence connected Gordon and the other appellants to the enterprise.[2]

---

[2] Gordon also challenges the admission of blood-stained clothing and bullet fragments. He waived this issue by failing to object to that evidence at trial. *See Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1066 (9th Cir. 1996) (as amended).

4.     *Sufficiency of the Evidence*.  Several Appellants challenge the sufficiency of the evidence supporting their convictions for Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy under 18 U.S.C. § 1962(d). The indictment alleged an association-in-fact enterprise, and the government presented evidence of an ongoing entity with a common purpose, which included shooting at and killing rivals, from which a rational trier of fact could have concluded that CDP constitutes an association-in-fact enterprise for purposes of 18 U.S.C. § 1961(4).  For example, CDP had longevity; an identity separate from its members, including identifying hand gestures and numbers; an informal hierarchy, including respected senior members and "shooters"; shared resources, which included guns and gang leaders giving younger members money to "benefit[] the gang."  Notably, gang members earned respect by killing rival gang members. Other evidence illustrated Appellants' conduct as gang members, including shooting at and killing rivals and participating in witness intimidation.

Considering that the definition of enterprise "is not very demanding," *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (internal quotation marks omitted), and should not be construed too narrowly, *see Boyle v. United States*, 556

---

And he has not shown plain error.  *See Lam v. City of Los Banos*, 976 F.3d 986, 1006 (9th Cir. 2020).

U.S. 938, 948–49 (2009), this evidence is sufficient to show CDP is an association-in-fact enterprise. 18 U.S.C. § 1961(4).

Sufficient evidence established Harding's and Gordon's intent to participate in the conspiracy. *See Smith v United States*, 568 U.S. 106, 110 (2013) (RICO conspiracy requires the government to prove, among other things, "that the defendant knowingly and willfully participated in the agreement (that he was a member of the conspiracy)"); *Fernandez*, 388 F.3d at 1230 ("[A] defendant is guilty of conspiracy to violate § 1962(c) if the evidence showed that [he] knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." (third alteration in original) (internal quotation marks omitted)).

The government presented evidence that Harding was a member of CDP, had a tattoo honoring a deceased CDP member, referred to himself with numbers associated with CDP, participated with other CDP members in a witness intimidation incident, was present when CDP members shot at a rival gang, and participated in robberies with other gang members. This evidence was sufficient to show his intent to participate in the CDP enterprise and his knowledge that one of its purposes was to kill rival gang members. *See Christensen*, 828 F.3d at 780 ("[A] RICO conspiracy under § 1962(d) requires only that the defendant was aware of the essential nature and scope of the enterprise and intended to participate in it." (internal quotation marks omitted)).

The government introduced evidence that Gordon "claimed CDP," referred to himself with numbers associated with CDP, and associated on social media with CDP members. The government also presented evidence from which the jury could reasonably infer that Gordon committed robberies with CDP members, and it presented evidence that he shot at members of a rival gang. Notably, there was evidence of his involvement in the attempted murder of Patrick McCree, as associate of a rival gang. This evidence was sufficient for a rational jury to find that Gordon was aware of the essential nature and scope of the enterprise and intended to participate in it. *Christensen*, 828 F.3d at 780.

Gordon challenges the sufficiency of the evidence to establish that Patrick McCree was shot "for the purpose of" maintaining or increasing Gordon's position in the enterprise, as required to support his convictions for attempted murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) (Count 9), and assault with a dangerous weapon in aid of racketeering in violation of § 1959(a)(3) (Count 10) (VICAR convictions). A rational jury could have concluded that the purpose element of the VICAR statutes was demonstrated by testimony that CDP members earned "respect" by "[k]illing a rival gang member," and by text messages showing that McCree was associated with CDP's rival gang, KOP, and that there was friction between the gangs. *See United States v. Banks*, 514 F.3d 959, 969–70 (9th Cir. 2008) (as amended) (holding that the "purpose element of the VICAR statute" is satisfied

12

when the defendant's motivation was, in part, to enhance his position in the enterprise "or if the violent act was committed as an integral aspect of his membership with the gang"); *see also United States v. Rodriguez*, 971 F.3d 1005, 1009–10 (9th Cir. 2020).

5.    *Jury Instructions*.  Ferdinand, Young, Gordon, and Harding challenge the instruction on the elements of a conspiracy to violate RICO, 18 U.S.C. § 1962(d).  Appellants concede that plain error review applies, and we find no such error.  The RICO instructions, when viewed "as a whole in the context of the entire trial," *United States v. Moore*, 109 F.3d 1456, 1465 (9th Cir. 1997) (en banc) (internal quotation marks omitted), adequately advised the jury of the need to prove each defendant's agreement.  *See Fernandez*, 388 F.3d at 1246–47.

We also reject Gordon's and Young's challenges to the *Pinkerton* jury instructions.  *See United States v. Gonzalez*, 906 F.3d 784, 791 (9th Cir. 2018) (discussing *Pinkerton* liability).  There was sufficient evidence to support giving these instructions.  *See id.*  The district court did not abuse its discretion in giving the instructions and doing so did not violate due process.  *See United States v. Bingham*, 653 F.3d 983, 997–98 (9th Cir. 2011).

6.    *Young's and Heard's Motions for a Mistrial*.  The district court did not abuse its discretion in admitting evidence of Young's past pimping of two minors, and denying Young's motion for a mistrial on Count 22, attempting to entice a minor

13

under the age of eighteen to engage in prostitution in violation of 18 U.S.C. § 2422(b). *See* Fed. R. Evid. 404(b)(2) (other act evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident").

Officer Angalet testified extensively about the facts supporting Count 22, including telling Young that her undercover persona was sixteen, and the government presented evidence that Young thought Angalet was under eighteen. *See United States v. Cherer*, 513 F.3d 1150, 1154 (9th Cir. 2008) (explaining that when a defendant "has targeted an adult decoy rather than an actual minor," the government must prove that "the defendant . . . believed the target was a minor"); *see also* 18 U.S.C. § 2422(b).

We also reject Young's argument that the district court erred by admitting impermissibly inflammatory evidence and denying his motion for a mistrial.[3] Young claims that it was error to allow his girlfriend, who worked for him as a prostitute, to testify that she had an abortion. The government introduced testimony and text messages that Young's girlfriend became pregnant with his child, she worked as a prostitute for him, and he told her to get an abortion, and she did so. This evidence

---

[3] Young, through his attorney, admitted guilt on Count 21, attempting to entice and persuade an individual to travel for prostitution in violation of 18 U.S.C. § 2242(a) and argues that the admission of inflammatory evidence and a witness's emotional outburst warranted a mistrial.

was relevant to Young's manipulative and coercive conduct and does not rise to the level of evidence we have identified as inappropriately inflammatory. *See United States v. Lynch*, 903 F.3d 1061, 1073 (9th Cir. 2018) (collecting cases); *see also United States v. Walker*, 993 F.2d 196, 199 (9th Cir. 1993) (as amended) (finding evidence relevant when it "corroborated the testimony of the special agent regarding" suspected criminal activity). Additionally, the court redacted the most inflammatory evidence and gave curative instructions to avoid prejudicing Young. *See Lynch*, 903 F.3d at 1073 (redactions are an "appropriate step[] . . . to avoid any unnecessary prejudice"); *see also Trillo v. Biter*, 769 F.3d 995, 1000 (9th Cir. 2014) (as amended) (juries are presumed to "listen to and follow curative instructions from judges").

Young objects to the denial of a mistrial after a witness's emotional outburst on the stand. The outburst was brief, and the court properly struck the testimony, admonished the jury to disregard the outburst, and reminded the jury to decide the case solely on evidence and the law. *See United States v. Lemus*, 847 F.3d 1016, 1024 (9th Cir. 2016) ("A cautionary instruction from the judge . . . is the preferred alternative to declaring mistrial when a witness makes inappropriate or prejudicial remarks; mistrial is appropriate only where there has been so much prejudice that an instruction is unlikely to cure it." (internal quotation marks omitted)). When viewed

15

in the context of the entire trial, the outburst did not "more likely than not materially affect[] the verdict." *Id.*

Heard argues that the government knowingly presented false testimony at trial when Brown testified about the robbery of City Shine, and when Francis Darnell testified about witnessing the Barrett murder. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959) (holding that a due process violation occurs where the state uses false evidence to obtain a criminal conviction); *United States v. Renzi*, 769 F.3d 731, 751 (9th Cir. 2014) (listing elements of a *Napue* violation). When the prosecution is "put on notice of the real possibility of false testimony," it must make "a diligent and good faith attempt" to determine if the witness is being truthful. *N. Mar. I. v. Bowie*, 243 F.3d 1109, 1118 (9th Cir. 2001) (as amended). Heard has not shown that the government failed to investigate or that Brown and Darnell gave testimony that was actually false. *See Bingham*, 653 F.3d at 995 (inconsistent statements are "not enough for a *Napue* violation"); *see also Renzi*, 769 F.3d at752 (rejecting *Napue* claim due to lack of materiality while also "doubt[ing]" that the testimony was actually false when the defendant "provided no evidence that [the witnesses] knew their testimony was inaccurate").

7. *Cumulative Error.* Because the district court committed no reversible error, the cumulative error argument advanced by several Appellants fails as well. *See United States v. Jeremiah*, 493 F.3d 1042, 1047 (9th Cir. 2007) (as amended).

16

8.    *18 U.S.C. § 924.*    In his initial briefing, Gordon argued that conspiracy offenses do not satisfy the elements clause of 18 U.S.C. § 924(c)(3)(A) and, because his convictions in Counts 9 and 10—which were the alleged predicate crimes of violence in Count 11—could be based on a conspiracy, his conviction in Count 11 is invalid.  We do not decide whether conspiracy offenses satisfy the elements clause of § 924(c)(3)(A).  Count 9 charged Gordon with "attempt[ing] to murder" McCree in violation of California Penal Code §§ 187, 188, and 189, and Count 10 charged him with "assault[ing McCree] with a dangerous weapon." Thus, the § 924 count was based on substantive crimes, not the RICO conspiracy and, thus, Gordon's claim fails.  *Cf. United States v. Jones*, 935 F.3d 266, 269, 273–74 (5th Cir. 2019) (per curiam) (concluding that § 924(c) conviction was invalid when it was specifically predicated on a RICO conspiracy).

In a post-argument filing, Gordon argues for the first time that attempted murder under California law does not constitute a crime of violence and, thus, cannot support his conviction under § 924(c).  Gordon relies on *United States v. Taylor*, __ S. Ct. ___, No. 20-1459, 2022 WL 2203334 (June 21, 2022), in which the Supreme Court held that attempted Hobbs Act robbery is not a crime of violence under the elements clause of 18 U.S.C. § 924(c).  *Id.* at *4.  Although *Taylor* was unavailable at the time of the initial briefing, the argument that attempted murder under California law does not constitute a crime of violence was

17

available to Gordon and he did not raise it.[4]  *Id.* at \*3 (describing arguments raised

in initial federal habeas petition).  We conclude that Gordon waived his argument

that attempted murder under California law does not constitute a crime of violence.

*See United States v. Briones*, 35 F.4th 1150, 1157–59 (9th Cir. 2022) (reiterating

that an issue not raised in an opening brief is not properly raised for the first time

in a supplemental brief).

Moreover, even if Gordon did not waive this argument, he fails to

acknowledge that the § 924(c) count, Count 11, was based on Count 9 (attempted

murder of McCree) and on Count 10 (assaulting McCree with a dangerous

weapon), and that the jury convicted him of both counts.  Thus, even if Gordon's

conviction of Count 9 does not validly support his § 924(c) conviction, that

conviction is still lawful because the other predicate offense, assault with a

dangerous weapon, qualifies as a crime of violence.  *See United States v. Gobert*,

943 F.3d 878, 880 n.2 (9th Cir. 2019) (explaining that when two counts "served as

predicate crimes of violence for [the] § 924(c) conviction[, the] §924(c) conviction

---

[4] Gordon did not make and thus waived any argument that *United States v. Dominguez*, 954 F.3d 1251, 1261–62 (9th Cir. 2020) (holding that attempted Hobbs Act robbery is a crime of violence), *vacated*, 2022 WL 2295921 (June 27, 2022), foreclosed the argument that attempted murder under California law was not a crime of violence.

[was] lawful so long as either offense . . . qualifie[d] as a crime of violence" and concluding that "assault with a dangerous weapon is a crime of violence").

In their initial briefing, Heard and Young also argued that their convictions under § 924(c) are infirm because they were predicated on the crime of murder in aid of racketeering ("VICAR murder"), which, they argue, does not constitute a crime of violence under § 924(c)(3)(A), as murder includes both intentional first-degree murder and second-degree reckless murder. They relied on the panel decision in *United States v. Begay*, 934 F.3d 1033 (9th Cir 2019), *reh'g en banc granted, vacated*, 15 F.4th 1254 (9th Cir. 2021), which addressed the federal murder statute. On rehearing en banc, we held that second-degree murder requires extreme recklessness reflecting an "extreme disregard for human life" and, thus, involves the use of force against the person of another and constitutes a crime of violence under § 924(c)(c)(A). *United States v. Begay*, 33 F.4th 1081, 1093 (9th Cir. 2022) (en banc). Considering that holding, we reject Heard's and Young's challenges to their § 924(c) convictions.

In post-argument briefing, Heard and Young for the first time argue that second-degree murder *under California law* is not a crime of violence. They did not brief this specific issue in their initial briefing. Instead, relying solely on the panel decision in *Begay*, they argued that their § 924 convictions were invalid because, the predicate crime of violence, "murder in violation of 18 U.S.C.

19

§ 1959(a)(1), can be grounded in a conviction/finding of second-degree murder," and "second-degree murder is not a crime of violence under the elements clause of § 924(c) because it can be committed recklessly." Neither Heard nor Young asserts that he was precluded from making the alternative argument regarding implied malice murder under California law they each belatedly assert in their supplemental briefing, and therefore they waived these arguments. *See Briones*, 35 F.4th at 1158–59. Heard and Young advance new and expansive arguments for the first time in simultaneous briefing and, thus, deprived the government of the opportunity to respond. *See id.* And they do not show good cause for failing to present the arguments sooner.

9.      *Double Jeopardy*. Young argues that his convictions and sentences on Counts 19 and 20 violate the Double Jeopardy Clause because § 924(c) is a lesser-included offense of § 924(j). The government agrees. Accordingly, because we affirm Young's conviction on Count 20, we vacate his conviction on Count 19 and remand for resentencing. *See United States v. Jose*, 425 F.3d 1237, 1247 (9th Cir. 2005) ("[W]hen a jury convicts on both the greater and lesser included offenses . . . the district court should enter a final judgment of conviction on the greater offense and vacate the conviction on the lesser offense.").

**AFFIRMED IN PART AND VACATED AND REMANDED IN PART.**